# Clemens v. Metropolitan Life Insurance Company of New York, Appellant.

*Insurance—Life insurance—Application—Statement as to occupation—Statement as to health.*

A statement by an applicant for life insurance that his occupation was "laborer in rolling mill," and that he had no other occupation, is not a misrepresentation where the evidence shows that the applicant had been a laborer in a rolling mill, that six months prior to the application he had quit work, and that he had not been engaged in any other or different work. The mere fact that he had not been at work for six months does not necessarily mean that he had abandoned his occupation.

The term "good health" when used in a policy of life insurance means that the applicant has no grave, important or serious disease, and is free from any ailment that seriously affects the general soundness and healthfulness of the system. A mere temporary indisposition which does not tend to weaken or undermine the constitution at the time of taking membership, does not render the policy void.

Evidence that an applicant for life insurance at the date of the application was receiving sick benefits from a beneficial association, and that six months prior to the application he had quit work under his doctor's advice because he was not strong, is not sufficient to overcome the warranty as to good health in the application, where it appears that the beneficial society paid benefits for minor and trifling ailments, and that the insurance company's physician, and the insured's wife both testify that he was free from organic disease, and that there was nothing the matter with him.

Argued April 15, 1902. Appeal, No. 75, April T., 1902, by defendant, from judgment of C. P. No. 1, Allegheny Co., September T., 1900, No. 104, on verdict for plaintiff in case of Barbara Clemens v. Metropolitan Life Insurance Company of New York. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit on a policy of life insurance. Before COLLIER, J.

At the trial it appeared that the company claimed that the policy was void by reason of misrepresentations as to occupation and health. There was evidence that at the time of the application the insured was drawing sick benefits from the St. Aloysius Society of St. Michael's Church.

Defendant made the following offer:

Defendant's counsel now proposes to prove by the witness on the stand that he was a member of the committee that

awarded the sick relief of this society; that he visited and paid the money to Mr. Clemens, the insured, prior to the taking out of the policy, as sick benefits.

Plaintiff's counsel objects to the offer as incompetent, irrelevant and immaterial. The Court: Objection sustained and bill sealed for the plaintiff. [3]

Defendant's counsel proposes to prove by the witness on the stand, followed by other witnesses, that the insured, Andrew Clemens, was a member of the St. Aloysius Benevolent Society of the South Side, and during the year 1897, from February 9 up to and beyond the date of the policy in suit, he received sick benefits from said society at the rate of $20.00 per month. This is for the purpose of showing that the insured was not in sound health and that he was aware of the fact. Plaintiff's counsel objected to the offer as incompetent, irrelevant and immaterial. The Court: Objection sustained; bill sealed for the defendant. [4]

Defendant's points were as follows:

2. The insured, having stated in his application that his occupation was laborer in rolling mill, and he had no other occupation, if the jury believe from the evidence that he had not been able, on account of ill health, to follow his occupation for a considerable time before the date of his application and concealed the fact, that constituted a fraud upon the company, the policy thereupon became void, and the verdict should be for the defendant. *Answer:* Affirmed, if the jury believe that the deceased was in ill health at the time of his application. [1]

4. If the jury believe from the evidence that the insured had been receiving sick benefits from the St. Aloysius Society for several months previous to the date of the application, as well as several months thereafter, and concealed that fact from the defendant, that would constitute a fraud upon the company, and the verdict should be for the defendant. *Answer:* Refused. [2]

Verdict and judgment for plaintiff for $532.08. Defendant appealed.

*Errors assigned* were (1–2) above instructions, quoting them. (3, 4) Rulings on evidence, quoting the bill of exceptions.

*W. K. Jennings*, for appellant, cited: March v. Metropolitan Ins. Co., 186 Pa. 629; United Brethren Mut. Aid Society v. White, 100 Pa. 12; Quirk v. Metropolitan Ins. Co., 12 Superior Ct. 250.

*W. H. Lemon*, for appellee, cited: Quirk v. Metropolitan Ins. Co., 12 Pa. Superior Ct. 250; Barnes v. Fidelity Mut. Life Assn., 191 Pa. 618; Smith v. Frazier, 53 Pa. 226; Blume v. Hartman, 115 Pa. 32; Patterson v. Marine Nat. Bank, 130 Pa. 419.

OPINION BY ORLADY, J., July 10, 1902:

The plaintiff brought suit to recover on an insurance policy issued by the defendant July 28, 1897, on the life of Andrew Clemens, her husband; in which policy it is provided: " Third. After two years this policy shall be noncontestable, except for the nonpayment of premiums as stipulated or for fraud." Andrew Clemens died March 25, 1900, and it was admitted in the affidavit of defense offered in evidence on the trial that the plaintiff had " from time to time paid or caused to be paid each and every of the premiums which fell due upon the said policy, and in all other respects complied with the terms thereof." The defense suggested in the affidavit was limited to two statements: 1. " In answer to statement two, I have never had any of the following complaints or diseases," among which is disease of the heart, and it was averred that at the date of the application and prior thereto the decedent had valvular insufficiency of the heart.   2.  That the applicant had averred, " 3d.  I am now in sound health," whereas the applicant was not in sound health, but in fact had been drawing sick benefits from the St. Aloysius society of St. Michael's Church for several months prior to the date of said application and of said policy.

On the trial it was contended that there was not sufficient proof of the identity of Andrew Clemens to entitle the plaintiff to recover, which argument is fully met by the proof of the agent's certificate that Andrew Clemens was examined by him and was the person to be insured at the time the application was written which was signed in his (the agent's) presence, and that he recommended the policy to be issued and was convinced of the identity of the person examined with the life proposed,

and the further affirmative proof by the widow, this plaintiff. The principal contention was that the policy had been procured by fraud, and that the fraud consisted in false statements and misrepresentations, which, under the terms of the policy, were warranties, as follows: First, that there was a misstatement in regard to the occupation of the insured; second, that the applicant concealed the fact that he was then receiving sick benefits from a society. In the application it is stated: "1. My occupation is laborer in rolling mill and I have no other occupation, except . . ." The testimony on this phase of the case was that Andrew Clemens had been a laborer in Byer's rolling mill, and that his name did not appear on their pay rolls after December 3, 1896; it was not contended that he had any other employment or engaged in any other kind of labor after that date. It was shown that he did not quit work because he was not able to work, but that he was a delicate man and had caught cold, and under the advice of a doctor did not go back to his work. The widow, this plaintiff, when called as if on cross-examination testified with reference to his condition at that time: "Q. Was there anything the matter with him? A. No, sir." Our attention has not been called to any case which holds that in answering truthfully in regard to his occupation the applicant must be continuously engaged therein up to the date of application. Under the evidence Andrew Clemens had a right to call himself a laborer in a rolling mill. There is no evidence that he had another occupation, nor that he had been engaged in any other or different work. The mere fact that he had not been at work for six months did not necessarily mean that he had abandoned his occupation. He had been a mill worker or laborer and his self designation as such was natural and reasonable, particularly so as he had not engaged in other work. The plaintiff's second point, as follows: "The insured having stated in his application that his occupation was laborer in rolling mill, and he had no other occupation, if the jury believe from the evidence that he had not been able on account of ill health to follow his occupation for a considerable time before the date of his application and concealed the fact, that constituted a fraud upon the company and the policy thereupon became void and the verdict should be for the defendant," was rightly answered by the court as follows: "Affirmed if the jury believe

that the deceased was in ill health at the time of his application." The principal thought suggested in the point was whether or not Andrew Clemens "had not been able on account of ill health to follow his occupation" and concealed that fact and not whether he was truthfully holding himself out as a laborer in a rolling mill.

Under the second defense it was shown that Andrew Clemens had been receiving sick benefits from the St. Aloysius Benevolent Society of the South Side, from February 9, 1897, to a time after the date of the application. The character of this society is not shown in the evidence. Its objects, rules, by-laws or conditions entitling a member to benefits therein do not appear anywhere in the proof, and in the light of the testimony that the society pays benefits for minor and trifling ailments or injuries, and that he was "well all the time," taken in connection with the testimony and report of the medical examiner of the defendant company, that he had made a physical examination of the lungs and heart, which were found to be normal, and, at the date of the application was "of the opinion that said life is in good health; that said life's constitution is sound, and I, therefore, recommend said life to be accepted at first-class rates," which report was declared to be true and correct by the same physician, when examined at the trial.

All of the matters indicated in the offers covered by the third and fourth assignments of error were fully testified to by the same witnesses and by others, so that the defendant was not in any way harmed by the rejection; and, as made, the offers were rightly excluded for the reason that it was not proposed by them to prove the conditions or circumstances under which Andrew Clemens received benefits from the benevolent association, or that he had any ailment or disease contradicting his statement of good health. The most direct testimony as to his condition of health was that "he had a pretty bad cold and got weak and that the doctor told him not to go back to work any more, that he was not strong enough, he was a kind of delicate man." This without more is not sufficient to take one out of the ordinary class of good health, which does not mean absolute perfection, but is comparative. The insured need not be entirely free from every infirmity or from

all the ills to which flesh is heir, but, if he enjoys such health and strength as to justify the reasonable belief that he is free from derangement of organic functions and from symptoms calculated to cause a reasonable apprehension of such derangement, and is, to ordinary observation and outward appearances, in reasonably good health so that he might with ordinary safety be insured upon ordinary terms, the requirement of good health is satisfied.   Slight troubles, temporary and light illness, infrequent and light attacks of sickness, not of such a character as to produce bodily infirmity or serious impairment or derangement of vital organs, do not disprove the warranty of good health.   In other words, the term good health, when used in a policy of life insurance, means that the applicant has no grave, important, or serious disease, and is free from any ailment that seriously affects the general soundness and healthfulness of the system.   A mere temporary indisposition, which does not tend to weaken or undermine the constitution at the time of taking membership, does not render the policy void: Barnes v. Fidelity Mutual Life Association, 191 Pa. 618.

The evidence was more or less conflicting on all the material questions of fact and was clearly for the jury.   The "noncontestable" clause in this policy would reasonably imply that a specially careful examination of the applicant would be made. The report of the defendant's physician who on July 11, 1897, made the examination, after he had carefully read the statement made in the application and had personally inspected the subject, found him free from any organic disease and recommended this risk to be accepted at first-class rates, was sufficiently supported by other evidence to warrant the verdict in favor of the plaintiffs.   We find no error which would justify a reversal, and the judgment is affirmed.