MAGGIE LEADMAN *v.* AETNA LIFE INSURANCE COMPANY

(No. 7128)

Submitted March 22, 1932. Decided March 29, 1932.

54

*Brown, Jackson & Knight* and *Herman Bennett,* for plaintiff in error.

*Taylor & Taylor,* for defendant in error.

LIVELY, JUDGE:

This action involves the validity of the life insurance policy of George J. Richardson. The beneficiary of the policy was awarded a judgment upon the demurrer of defendant to the evidence, and defendant secured a writ of error.

The material events connected with this case occurred within six months in 1930. Mr. Richardson made a preliminary written application for the policy on April 12th. Three days later, he consulted Dr. C. E. Copeland, complaining of headache, dizziness, shortness of breath and loss of energy. The doctor examined Richardson carefully and diagnosed his trouble as nephritis ("a kidney condition") and arterial sclerosis (a hardening of the arteries) and so advised him, explaining his danger and prescribing medicine and diet. Richardson had two prescriptions given him by Dr. Copeland filled at a local drug store, and returned to the doctor on April 25th. His condition showed some improvement then, but the doctor tried to prevail upon him to rest and warned him that he was likely to have a cerebral hemorrhage. On May 5th, Richardson completed his application. At that time, he answered in the negative *(as true)* printed questions in the application asking if he had consulted a physician for or suffered from any disease of the blood vessels or kidneys. The policy was issued on May 5th. Dr. J. E. Roberts treated Richardson for an infected arm in August, the result of which is not stated. Richardson died on September 23rd. He was examined shortly before his death by Dr. J. E. Rucker who

certified that his death was caused by "hypertension (cerebral hemorrhage) and arterial sclerosis."

Exception is taken by the plaintiff to the form of defendant's demurrer to the evidence. The demurrer included all of the evidence, both of plaintiff and defendant, and otherwise is in the accepted form.

Plaintiff contends that Richardson did not know the answers in his application were false. This contention is based on the evidence of Drs. Roberts and L. A. Petty that they examined Richardson and found nothing materially wrong with him. Dr. Roberts made his examination in March, 1930, and Dr. Petty, acting for defendant, made his on May 5th. Despite the clean bill of health given Richardson by Dr. Roberts, Richardson reported the distressing symptoms to Dr. Copeland in April and was then definitely informed of his maladies, as heretofore stated. The evidence does not disclose that any physician advised Richardson to the contrary prior to May 5th. The answers in the application were made while Dr. Petty was examining Richardson, and evidently before Dr. Petty assumed that Richardson was sound. Consequently, no reason whatsoever appears why Richardson should have doubted Dr. Copeland's diagnosis at the time he answered the questions in the application. Moreover, an ordinary applicant for insurance cannot be permitted to set up his judgment of his condition against that of a competent physician. Richardson having consulted Dr. Copeland and being definitely advised that he had nephritis and arterial sclerosis, could not in good faith deny that he had consulted a physician for those diseases. *Saltesz* v. *Woodmen*, 110 W. Va. 513, 516-17, 159 S. E. 513.

The plaintiff makes this contention: "The whole of the written application of the assured for the policy was not attached to the policy when issued, and this fact was unknown to the plaintiff until the trial. Dr. Petty testified and his testimony is not contradicted nor is any explanation thereof offered by the defendant that only about half of the result of his examination is attached to the policy." The conclusion drawn by plaintiff from Dr. Petty's testimony is wholly unfounded. Dr. Petty did testify, as the plaintiff

states; but the examination is one thing and the written application is another. There is no evidence whatsoever that the whole of the application was not attached to the policy. Besides, Dr. Petty was a witness for the plaintiff, if the examination of Richardson had disclosed any matters tending to explain or qualify the answers in the application, the plaintiff could have brought out such matters from Dr. Petty.

The fact that a specific answer is sought by the insurer in an application for an insurance policy, makes that answer material. *Woody* v. *Ins. Co.*, 105 W. Va. 215, 141 S. E. 880; *Stockton* v. *Ins. Co.*, 105 W. Va. 240, 141 S. E. 878. When such an answer is untrue the policy will ordinarily be forfeited. *Saltesz* v. *Woodmen, supra; Myers* v. *Ins. Co.*, 83 W. Va. 390, 98 S. E. 424. So, our decisions foreclose this case against the plaintiff.

The judgment of the lower court is reversed and judgment enerted here for defendant.

*Reversed and judgment entered.*