## Ratkovic *v.* Metropolitan Life Insurance Co., Appellant.

Argued March 10, 1937.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

494

*J. Dress Pannell,* for appellant.

*William S. Middleton,* with him *William J. Lescure, Jr.* for appellee.

OPINION BY PARKER, J., April 16, 1937:

Mary Ratkovic brought this action in assumpsit against the Metropolitan Life Insurance Company to recover as beneficiary the face of a policy in that company on the life of her husband, Daniel Ratkovic. The defense was that the insured in his written application for the insurance knowingly made false and fraudulent answers to questions which were essentially material to the risk and that by reason thereof the policy was void. The issue was submitted to a jury which found for the plaintiff. The defendant, the appellant, complains of the refusal of its motions for binding instructions and for judgment n. o. v.

The policy was issued March 6, 1930, and the insured died June 13, 1930, after paying all premiums required by the terms of the policy. Thereafter proofs of death were furnished to the company and no objections were made to the form of such proofs. The questions and answers contained in the application and which gave rise to the controversy were as follows: "6. Present condition of health? Ans. Good. 7. (a) When last sick? Ans. None. 16. Name and address of your usual medical attendant? Ans. None. 18. Have you been attended by a physician during the last five years? If yes, give name of complaints, dates, how long sick, and names of physicians. Ans. No. 20. How much time have you lost from work through illness during the last five years? Ans. None." The application signed by the insured set forth as follows: "I HEREBY CERTIFY that I have read the answers to the questions in Part A hereof and to the questions in Part B hereof, before signing, and that they have been

correctly written, as given by me, and that they are full, true and complete, and that there are no exceptions to any such answers other than as stated herein."

The policy provided that "all statements made by the Insured shall, in the absence of fraud, be deemed representations and not warranties." The plaintiff, in her reply to new matter set up in the affidavit of defense, admitted that the answers made in the application "were material representations effecting the insurance" and admitted that the answers to questions 7, 16, 18, and 20 were not true in fact. Insured had been treated by a physician in 1929 for phlebitis of the right leg and for arthritis of the right ankle, and while receiving treatment in 1929 lost time from his work totaling about two months. The falsity of material answers was also disclosed by the proofs of death offered by plaintiff.

In answer to this admitted situation the plaintiff asserted that defendant was estopped from relying on the claim of fraud for the reason that plaintiff's decedent had secured life insurance for $2,000 from defendant on February 28, 1928, which policy had lapsed for nonpayment of premiums. In the application for that insurance Ratkovic stated that he had been treated in November, 1927, by Dr. Kosevar for a cold of one week's duration. In addition and in that connection, plaintiff made the following averment: "He was an unnaturalized alien, having come to America from Jugoslavia in Central Europe. He was unlearned and not versed in the English language. There was no interpreter present when the application was filled in by the doctor or agent. That Ratkovic was endeavoring to be honest, and was honest so far as he could understand what was transpiring, is evidenced by his answers to similar questions set forth in the continuation of the application for his first policy."

That we may rest our decision on admitted facts not

involving matters for the consideration of a jury, we will disregard the answer to the sixth question to the effect that plaintiff was in good health when the application was made. The admissions with reference to the other answers that they were false and material to the risk were clearly set forth. The answers to the questions propounded to the insured were representations and not warranties and in the absence of fraud a proven mistake in the information given did not, under the terms of the contract, work a forfeiture. However, where untrue essential facts have been deliberately certified to and as a result a policy has been issued, there can be no recovery when death occurs. Inaccurate statements as to age, the employment of other physicians than those named, previous illness not of a trivial nature, or a denial that insurance had been sought from other companies when in fact it had been, are all to be deemed material representations. However, where a misstatement is made inadvertently or the narrative is incomplete in detail and was not made with the intention of concealing the truth a recovery is permissible, the question of good faith being for the jury: *Livingood v. New York Life Ins. Co.,* 287 Pa. 128, 131, 134 A. 474.

Where a policy provides, as here, that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, the insurer, to avoid the policy, must prove fraud upon the part of the insured in the making of the statements: *Stein v. New York Life Ins. Co.,* 319 Pa. 225, 179 A. 589. The insurer must show not only that the answers were false in fact, but also that insured knew they were false when he made them: *Lilly v. Metropolitan Life Ins. Co.,* 318 Pa. 248, 251, 177 A. 779.

First considering the proofs with reference to the falsity of the answers and the materiality of those answers as they stood without reference to the facts al-

leged by plaintiff with relation to the former application and the illiteracy of the insured, it is clear that the false answers were knowingly made and therefore fraudulent. The facts relied upon by defendant were shown by the admission of plaintiff in her reply to new matter and in the proofs of death offered by plaintiff. There was therefore no room for the application of the rule laid down in *Nanty-Glo Boro. v. Amer. Surety Co.*, 309 Pa. 236, 163 A. 523, and the question presented was one of law for the court. The insured declared in writing that he had not been attended by a physician for five years, that he had not been sick, and that he had not lost any time through illness for five years. These statements were made notwithstanding the admitted facts that he was attended for illness by Dr. A. J. Griest from October 18 to November 5, 1929, and by Dr. E. R. Whipple from November 24 to December 5, 1929, and that due to the illness he was absent from work while attended by Dr. Griest and at the time of the second illness was unable to perform his work from November 25, 1929, to January 5, 1930. During these illnesses he was treated for phlebitis of the right leg and arthritis of the right ankle, admittedly painful and serious diseases. This illness and incapacity to work had continued to within two months of the time the policy issued. It is absurd to suggest that the insured did not know these statements to be false when he made them and they were therefore fraudulently made.

It is well settled that ordinarily the questions of the truth or falsity of the answers and whether or not they were given by the insured in good faith are for the jury: *Evans v. Penn Mutual L. Ins. Co.*, 322 Pa. 547, 555, 186 A. 133; *Suravitz v. Prudential Ins. Co.*, 244 Pa. 582, 91 A. 495. Where, however, it appears affirmatively from documentary evidence or from the admissions of the plaintiff that the policy was issued in reliance on false and fraudulent statements essentially

material to the risk made by the insured and the answers are shown to have been given by insured under such circumstances that he must have been aware of their falsity, the court may direct a verdict or enter judgment for the insurer: *Evans v. Penn Mutual L. Ins. Co.,* supra. There being no conflicting evidence, the questions then presented were clearly for the court and not for a jury.

Are these conclusions affected by the illiteracy of the insured or the facts disclosed in the former application for insurance? The plaintiff having a verdict we must accept the evidence produced by her as to the ability of the insured to understand English as verity. One of plaintiff's witnesses, the attending physician, testified that the insured spoke English "right good for a foreigner; like a good many foreigners, not perfect but good enough to get along." Other witnesses called by plaintiff testified that he had come to this country in 1908 or 1909 and that he could read and write in his own language. A careful reading of the entire record shows that there is no affirmative evidence that the insured could not read the English language. It does appear that he could write his name in English characters, making a good signature. There was not an iota of testimony to indicate that the answers as given by the insured to the physician were not correctly set down in the application. In addition, the insured certified that he had read the application and that the answers were correctly recorded. If the insured could not read English, plaintiff should have proved that fact. There is, therefore, not the slightest basis for the assumption that the answers as recorded were not the answers of the insured. The circumstances here shown were more favorable to the insurer than those in *Panopoulos v. Metropolitan Life Ins. Co.,* 96 Pa. Superior Ct. 415, 423, where a similar situation was exhaustively considered, and it was held that the evidence of illiter-

acy was not sufficient to relieve the insured from the consequences of making false statements. It is undoubtedly true that a greater burden rests upon the insurer to deal fairly with the insured where he cannot understand the English language, but here the proofs failed to disclose serious incapacity or any indication of imposition upon the insured. This branch of the case is ruled by the Panopoulos case and the facts distinguish the situation from that appearing in the case of *Suravitz v. Prudential Ins. Co.*, 261 Pa. 390, 104 A. 754.

The court below relied largely on the second position of plaintiff that the insurer was estopped from claiming that it was misled by the answers contained in the application for this insurance since it had in its possession another and previous application containing an answer inconsistent with the last answer. The facts in this respect are not sufficient to support the claim that the insurer was estopped. Assuming that the insurer had found and examined the former application of the insured, it would have had but one additional fact and that was that in 1928 the following information was given the company: "16. Name and address of your usual medical attendant? Ans. Dr. Kosevar, Steelton, Pa. 18. Have you been attended by a physician during the last five years? If yes, give name of complaints, dates, how long sick, and names of physicians. Ans. Cold, Nov. 1928, 1 wk. Dr. Kosevar. 20. How much time have you lost from work through illness during the last five years? Ans. None."

While it is true that in 1930 the insured said that he had not been attended by a physician for five years, the former statement would not excite any suspicion in a reasonable and well balanced mind that the risk was not a good one, nor would it place the defendant upon inquiry. A failure of an insured to report such a slight and temporary indisposition as a common cold would

not sustain a breach of warranty that the applicant was in good health: *Baer v. State Life Ins. Co.*, 256 Pa. 177, 183, 100 A. 745. "Slight troubles, temporary and light illness, infrequent and light attacks of sickness, not of such a character as to produce bodily infirmity or serious impairment or derangement of vital organs, do not disprove the warranty of good health": *Clemens v. Metropolitan Life Ins. Co.*, 20 Pa. Superior Ct. 567, cited with approval in *Livingood v. New York Life Ins. Co.*, supra. If an insurer could not avoid liability by insured's failure to disclose the fact that he had three years before been treated for a cold and that he lost no time from his work on that account, then certainly the failure to report it the second time should not mitigate the fraud disclosed. Such failure to report the attendance of a physician for a common cold certainly would not excite suspicion in the mind; neither would it excuse the failure to report the attendance of a physician for serious ailments and the loss of work for two months on that account. The company does not rely alone on the fact that the insured failed to report attendance by a physician. It does rely, as it has a right to, on the fact that the insured knowingly and fraudulently failed to report attendance by a physician for a recent and serious ailment which caused the insured to lose two months of work within less than four months of the date the application was signed.

The basic facts being either admitted or proved by the uncontradicted evidence of plaintiff, the case was for the court and not for a jury and defendant's motion for binding instructions should have been granted.

Judgment reversed, and it is directed that judgment be now entered for the defendant.