ALENE KENT *v.* GENERAL AMERICAN LIFE INSURANCE COMPANY

(No. 8615)

Submitted March 2, 1938. Decided April 5, 1938.

*Capehart and Miller,* for plaintiff in error.

*Harold V. Knight* and *Sale, St. Clair and Sale,* for defendant in error.

Fox, Judge:

This is an action at law to recover on a group insurance policy originally issued by the Missouri State Life Insurance Company, the obligation of which was later assumed by the General American Life Insurance Company, to provide life insurance for the membership of an association of employees of the United States Coal and Coke Company. William Kent, an employee of the last mentioned company, died of apoplexy in the month of December, 1935 and Alene Kent, beneficiary named in the certificate issued to him, prosecutes this action on a certificate issued under said policy, effective as of the 3rd day of April, 1935, that being the date when the insured made application for insurance. Under the group insurance contract, employees of the Coal and Coke Company were entitled to the benefit of the group policy, provided they made application to the association for membership and insurance within thirty-one days after they entered the employment of said company; but it further provided that if application for such membership and insurance should be made after the expiration of thirty-one days, insurability satisfactory to the company at the time of application for membership should be presented. William Kent had worked for the Coal and Coke Company on more than one occasion. His last employment commenced on the 19th of January, 1935, and his application for membership and insurance was made on April 3, 1935. His application for the insurance to which he was entitled under his membership in said association, was made to the company direct, and he therein made answer to certain specific questions, out of which this controversy originates. The case was tried before a jury and verdict rendered for the plaintiff, which, on motion of the defendant, was set aside by the

court; to that action of the court the plaintiff prosecutes this writ of error.

The errors relied upon for reversal are (1) that the case was one of conflicting evidence; that the jury's verdict was supported by a preponderance of the evidence and should not have been set aside; and (2) that the court, in setting aside the verdict, misconceived the decisive issue, namely, whether or not, if there were misrepresentations on the part of the insured in his application, the same were fraudulent and made with intent to deceive, in effect, taking the position that a showing of fraudulent intent to deceive was necessary to defeat recovery.

Defendant contends that the representations made by William Kent, in his application upon which the certificate of insurance was issued to him, were false in two respects: (1) that in answer to question number 9, "Have you ever had or been told you had * * * high blood pressure?", he replied "No"; and (2) in answer to question number 11, "Are you now in good health?", he replied "Yes". The answer given as to the good health of the applicant is not seriously pressed as a ground for setting aside the verdict, it being practically conceded that the answer to this question might be construed as nothing more than the opinion of the applicant, and a question for the jury. However, as to the answer given to question number 9, it is insisted that that question being one of fact about which no opinion of the witness was called for, and bearing on a material matter, the answer, if false, prevents recovery under the policy issued thereon. This, of course, requires a consideration of the facts.

As stated above, William Kent was formerly an employee of the Coal and Coke Company. He again applied for employment in the year 1933, and he was first examined by Dr. Whitney on or about the 15th of June of that year. Whitney testifies that Kent was at that time suffering from chronic nephritis and high blood pressure; that his blood pressure was 210 and that 150 would have been fairly high; that he was given a "D" rating which

ordinarily excluded anyone from employment; that he was at that time told that he had high blood pressure and was advised not to do hard work; and that he was then referred to Dr. Shanklin. Shanklin testifies that Kent came to him and presented a card which he had received from Dr. Whitney, and that he then examined him. He states that when he made the examination, Kent was suffering from nephritis and high blood pressure; that his blood pressure was 225; that he told him of his condition; and that he was only permitted to go to work by obtaining special consent from the general superintendent. These physicians each testified, not only from independent recollection of the examinations made by them; but also from records kept by them of their findings, and there is nothing in the evidence or circumstances which in any way weakens the force of their statements as to what they told Kent at the time he was examined by them. There is no testimony whatever tending to contradict the statements of the two physicians. The testimony offered by the plaintiff is that of Dr. Evans, a physician for another coal company for which Kent worked in September, 1934, who does not recollect that he ever examined Kent, but merely says that if he had examined him and found his blood pressure to be abnormally high, he would not have passed him and permitted him to go to work. John Kent, son of the insured, and Alene Kent, his wife, both testify that William Kent seemed to be in good health for a long period before his death. There is some testimony that Kent was treated for a slight stroke of apoplexy shortly before his application for insurance, but inasmuch as this could only bear upon the question of his good health at the time the application was made, and that point being excluded from this decision, it is not necessary to further consider it.

On the question of fact presented, namely, whether or not anyone ever told William Kent that he had high blood pressure, we think the evidence clearly shows that he was fully advised of what the doctors believed was his

condition in June, 1933, and that they told him he had high blood pressure. Therefore, the statement contained in his application that no one had ever told him of such condition was a false statement of a material fact bearing upon the issuance of the certificate being applied for.

We treat the statement made by the insured as a representation and not a warranty. *Logan* v. *Provident Saving and Life Assurance Society,* 57 W. Va. 384, 50 S. E. 529; *Meyers* v. *Life Ins. Co.,* 83 W. Va. 390, 98 S. E. 424. But so treating that statement, we are bound by many decisions of this court that, whether a representation or a warranty, "The fact that a specific answer is sought by the insurer in an application for an insurance policy, makes that answer material. When such answer is untrue the policy will ordinarily be forfeited." *Leadman* v. *Aetna Life Ins. Co.,* 112 W. Va. 53, 163 S. E. 716. This case was followed in *Bender* v. *Ins. Co.,* 117 W. Va. 510, 185 S. E. 907, and *Dickerson* v. *Pacific Mutual Life Ins. Co.,* 117 W. Va. 812, 188 S. E. 378. See also *Woody* v. *Continental Life Ins. Co.,* 105 W. Va. 215, 141 S. E. 880; *Stockton* v. *Continental Life Ins. Co.,* 105 W. Va. 240, 141 S. E. 878; *Harris* v. *New York Life Ins. Co.,* 86 W. Va. 638, 104 S. E. 121. It was not necessary to show that the insured, in answering the questions propounded to him, was guilty of fraud and intent to deceive. The weakness of the case for recovery is that in answer to a question treated as material, the insured gave an incorrect answer.

We hold that the circuit court properly set aside the verdict. The judgment is therefore affirmed.

*Affirmed.*