## Crawford, Appellant, *v.* Manhattan Life Insurance Company of New York.

Argued April 12, 1966. Before Ervin, P. J., Wright, Montgomery, Jacobs, Hoffman, and Spaulding, JJ. (Watkins, J., absent).

*John M. Means,* with him *I. Martin Wekselman,* and *Smith & Hodel,* for appellant.

*G. Donald Gerlach,* with him *Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY HOFFMAN, J., June 17, 1966:

This is an appeal by Armene Crawford, appellant, from an order of the lower court entering judgment n.o.v. in behalf of appellee, The Manhattan Life Insurance Company of New York (Manhattan). The action arose out of appellant's attempt to recover the face amount of a life insurance policy issued by Manhattan on the life of appellant's husband, Roy Crawford.

On or about August 20, 1956, Roy Crawford, a resident of West Virginia, submitted an application for a life insurance policy to Northwestern Mutual Life Insurance Company (Northwestern), through Robert Law, an authorized agent of Northwestern. This application disclosed that Crawford had been hospitalized for a heart attack in 1950 and again in September 1955 for overexertion and dyspnea. Northwestern rejected Crawford's application. Law, thereupon contacted the general agent of Manhattan in Pittsburgh and forwarded to him, along with other information, the medical portion of the Northwestern application.

After reviewing the Northwestern application, Manhattan indicated that it would consider a maximum

policy of $10,000. On September 28, 1956, Roy Crawford submitted an application to Manhattan. In this application Crawford failed to answer a question concerning prior treatment by physicians. On October 26, 1956, Manhattan forwarded the policy to its general agent in Pittsburgh to be delivered subject to a signed amendment by Crawford answering the question relating to prior medical treatment. The policy and amendment forms were then sent to Law in West Virginia. After several conversations with Law, Crawford signed the amendment which was then returned to the general agent. It is clear from uncontradicted hospital and physician's records that the application, as amended, contained misstatements of fact.

The Manhattan policy provided that, "All statements made by, or by the authority of, the applicant for the issuance of this policy shall be deemed representations and not warranties."

The lower court, in granting judgment n.o.v., applied the law of West Virginia with respect to misrepresentations in insurance policies. Appellant contends, however, that the court should properly have applied Pennsylvania law. In passing on this question, we must, of course, apply the conflict of laws rules of our courts. Restatement, Conflict of Laws, §7 (1934).

Under the traditional Pennsylvania rule, the construction of a contract is governed by the law of the state where the contract was made. An insurance contract is "made" in the state in which the last act legally necessary to bring the contract into force takes place. The place of making an insurance contract is the place of delivery, where delivery is the last essential act. *Ruhlin v. New York Life Insurance Company,* 106 F. 2d 921, 923 (3d Cir. 1939). In the instant case the policy provided that the insurance shall take effect "when the policy has been issued, delivered and the first full premium thereon paid."

The place of delivery, however, varies with the method of delivery. "If the policy becomes effective upon delivery by mail, the place of contracting is the place of posting. Restatement, Conflict of Laws, §317. If it becomes effective upon delivery and is sent by the company to its agent and by him delivered, the place of contracting is the place of delivery to the assured. Restatement, Conflict of Laws, §318. In the absence of any proof as to the place of delivery, in the case of life insurance contracts, there is a presumption of delivery at the residence of the insured. Faron v. Penn Mutual Life Insurance Company, 3 Cir. 1949, 176 F. 2d 290; Harry L. Sheinman & Sons v. Scranton Life Insurance Company, 3 Cir. 1942, 125 F. 2d 442." *Edwards v. Commonwealth Mutual Fire Insurance Company of Pennsylvania,* 197 F. 2d 62, 64 (3d Cir. 1952). Accord *Roth v. Maryland Casualty Company,* 209 F. 2d 371 (3d Cir. 1954). Restatement, Conflict of Laws, §332 (e) (1934).

Appellant contends that delivery occurred when the general agent posted the policy in Pittsburgh. She concludes, therefore, that Pennsylvania law should apply, since "Law was Crawford's agent for purposes of receiving the mailed policy and delivering the policy to Crawford . . . There was nothing further to be done. The premium had been paid in advance and the policy was in effect at the time [the original application] was signed in Pittsburgh on September 28, 1956 by reason of the provision contained in paragraph (d) of Part I of the application."[1]

---

[1] Paragraph (d) of Part I stated, "Except as provided in (e), if a payment is made at the time of signature of this Part I and duly entered in item 6 hereof, and such payment is not less than $10 or a pro rata premium for one month, whichever may be the greater, and if the application within 45 days after completion is approved at the Company's Home Office for issue of the policy without change in the amount, classification, plan of insurance or

Appellant's contention is inaccurate. Her own evidence demonstrates that when the policy was mailed to Law by the general agent, it was to be delivered "subject to signed amendment." In this case, the last act necessary to bring the insurance contract into force was the signing of the amendment by Crawford in West Virginia to be followed by delivery of the policy. Thus, under our conflict of laws rules, West Virginia law should apply, since, in the absence of proof to the contrary, there is a presumption that delivery was at Crawford's residence.

The result would be the same even if the standards enunciated in *Griffith v. United Air Lines,* 416 Pa. 1, 203 A. 2d 796 (1964), are applied in this case. Under *Griffith* the law of the state which has the most significant relationship with and interest in the occurrence and the parties would control. *McSwain v. McSwain,* 420 Pa. 86, 215 A. 2d 677 (1966) ; *Elston v. Industrial Lift Truck Company,* 420 Pa. 97, 216 A. 2d 318 (1966).

West Virginia's interest in this insurance contract and the rights of the parties is apparent and significant. The insured was a resident of West Virginia; the policy was solicited in West Virginia; the application and amendment were prepared in West Virginia; the policy was delivered in West Virginia; and the beneficiary is a resident of West Virginia. Cf. *Exchange National Bank of Olean v. Insurance Company of North America,* 341 F. 2d 673 (2d Cir. 1965).

---

benefits applied for, the insurance shall relate back to and be deemed to have taken effect upon the completion of the application."

As we note above, appellant errs in her contention that the policy had been fully approved by the company at its Home Office in New York. If the application had been accepted as originally written at the Home Office, however, prior cases would indicate that the law of New York, rather than the law of Pennsylvania would apply. *Ruhlin v. New York Life Insurance Company,* supra.

Pennsylvania, however, has relatively little interest in this suit between Manhattan, a New York insurance company, and appellant, a West Virginia resident. Our Commonwealth's only contact with this case is the location of Manhattan's general agent in Pennsylvania. Similarly there would be little reason to apply the law of New York simply because Manhattan's home office is located there. As the U. S. Court of Appeals in *Exchange National Bank of Olean v. Insurance Company of North America,* supra, recognized in applying *Griffith*: "The hope of achieving uniformity in the interpretation of the controverted clause by having the interpretation of the courts of the state of the home office control . . . is illusory in this case, since we are dealing with a standard clause used by innumerable insurance companies, whose home offices are scattered throughout the fifty states." (p. 675).

The fact that Manhattan was not licensed to do business in West Virginia does not affect this result. "If the insurer does business in a state by soliciting members and issuing policies therein, its contracts so made are governed by the laws of that state whether or not it applied for the privilege of doing business therein." 12 Appleman, Insurance Law and Practice, §7073, p. 103 (1943). See *Fleet Messenger Service, Inc. v. Life Insurance Company of North America,* 315 F. 2d 593 (2d Cir. 1963).

We conclude, therefore, as did the lower court, that West Virginia law is properly applicable in the instant case.

The law with respect to misrepresentations in West Virginia was set out by the Supreme Court of Appeals of West Virginia in *Myers v. Mutual Life Insurance Company of New York,* 83 W. Va. 390, 98 S.E. 424 (1919) : "In many of the cases it has been argued that where such a representation is false, but it did not appear that the insured had not acted in perfect good

faith in making it, it would not be treated as a fraudulent representation. But the correct rule in this regard seems to be that laid down in Schwarzbach v. Protective Union, supra, to the effect that, as to those representations peculiarly within the knowledge of the insured, if the statements are untrue he is guilty of legal fraud, though he may not have intended to deceive, and he will be bound by the effect thereof. [citing cases]. The doctrine of these cases seems to be that where a representation is made as to the existence or nonexistence of a certain state of facts which, from their peculiar nature, the assured is bound to know about, he will be bound by the representation, notwithstanding for the moment he may not have recalled the facts, or have overlooked them.

"Difficulty is also encountered in determining what representations are material in such an application. In this regard it seems to be firmly established by the authorities that by making inquiry in regard to the existence or nonexistence of a particular fact, or facts, the same is made material; it is brought into prominence by the very force of the fact that information is sought concerning the particular matter, and for this reason the courts with practical unanimity treat answers to such specific inquiries as material misrepresentations." These principles have been consistently followed by the Supreme Court of West Virginia. See *Christian v. State Farm Mutual Automobile Insurance Company*, 144 W. Va. 746, 110 S.E. 2d 845 (1959); *Faulkiner v. Equitable Life Insurance Company*, 144 W. Va. 193, 107 S.E. 2d 360 (1959); *Saltesz v. Woodmen of the World*, 110 W. Va. 513, 159 S.E. 513 (1931); *Woody v. Continental Life Insurance Company*, 105 W.Va. 215, 141 S.E. 880 (1928); *Kent v. General American Life Insurance Company*, 120 W. Va. 58, 195 S.E. 670 (1938).

Appellant contends, however, that §3377 of the West Virginia Code, Act of March 6, 1957, changed the law with respect to the above holdings. That act provides:

"All statements and descriptions in any application for an insurance policy . . . shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealments of facts, and incorrect statements shall not prevent a recovery under the policy unless:

(a) Fraudulent; or

(b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(c) The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise."

After carefully considering this statute, we find no reason to conclude that it represents other than a codification of existing law. The language in this statute is much akin to the statement by the Supreme Court of Appeals of West Virginia in *Christian v. State Farm,* supra, that, "Fraud on the part of the insured in the procurement of the policy, or a false statement by the insured relative to a material fact in the application therefor is sufficient to defeat a recovery in an action on such policy." Nor is there anything in the statute to indicate that in determining materiality, the legislature intended to abrogate the well-established West Virginia rule that, "The fact that a specific answer is sought by an insurer in an application for an insurance policy, makes that answer material. *Faulkiner v. Equitable Life Insurance Company,* supra.

In the instant case it is clear that Crawford, in his application, as amended, made material misrepresenta-

tions concerning certain known facts in answer to specific questions.

Question 19 of the application asked: "Have you ever been an inmate of, or received treatment or cure at an asylum, hospital or sanitarium?" In the original application Crawford indicated that he had been hospitalized for one week in 1950 for a heart attack. In the amendment he disclosed further that he had been hospitalized for one week in September 1955 for a checkup. Crawford failed to disclose, however, that he had been hospitalized again on January 30, 1956 for one week for treatment of arteriosclerotic heart disease complicated by a pulmonary infarction and chronic bronchitis.

Question 20 of the application asked: "What other physician or physicians have you consulted or been treated by, within the last five years?" Crawford did not answer this question in the original application. In his amendment, however, he listed, among others: "Physician A. M. Phillips, M.D., Date—January 1956, Reason—Check-up, Duration—One Week, Results—Negative." Dr. Phillips was, in fact, Crawford's physician during his January 1956 hospitalization for heart disease. In addition, Crawford failed to disclose that he had visited and been treated by Dr. Phillips on at least three occasions in the spring of 1956.

Question 12 of the application asked: "Have you ever been X-rayed or had an Electrocardiogram? If yes, state when, by whom made and explain purpose." Crawford disclosed an electrocardiogram in connection with his 1950 heart attack. Uncontroverted hospital records established, however, that, in addition, he had electrocardiograms during both the September 1955 and January 1956 hospitalizations.

Question 10 (c) and the answer thereto were: "Have you ever been on a restricted diet?" A. "No." Crawford had been placed on a low-salt diet during his hos-

pitalization in 1956, however, and this diet had continued after his discharge.

Question 17 (b) of the application and the answer thereto were: "Have you ever raised or spat blood?" A. "No." The hospital records reveal, however, that one of Crawford's chief complaints upon being admitted to the hospital in January 1956 was that he had been spitting blood every eight hours for about a week, and that he continued to raise blood during this hospitalization.

These statements were misrepresentations of material facts which were sufficient in themselves, under West Virginia law, to prevent recovery under the policy.

Appellant seeks to avoid the effect of these misstatements by proving that Crawford attempted to answer the questions correctly, but that his answers were improperly recorded, and that agent Law added answers after Crawford signed the amendment. As President Judge KELLER indicated in *Soltaniuk v. Metropolitan Life Insurance Company,* 133 Pa. Superior Ct. 139, 144-5, 2 A. 2d 501 (1938), the burden upon the insured in such cases is ". . . to produce evidence not only preponderating, but of a kind, character and quality which is not overstated by the phrase 'clear and satisfactory evidence' . . . ." If the evidence is vague, unsubstantial or indefinite, it should not be submitted as a question of fact to the jury. (p. 143).[2]

The only evidence presented by appellant to prove this assertion was the testimony of Robert Law who was called by appellant as on cross-examination. Law testified as to the manner in which the application

---

[2] The questions of presumption and burden of proof in this regard are, of course, procedural and to be determined by the law of the forum. *Sloniger v. Enterline,* 400 Pa. 457, 162 A. 2d 397 (1960) ; *Carroll v. Godding,* 155 Pa. Superior Ct. 490, 38 A. 2d 720 (1944).

and amendment had been prepared. He stated that he recorded what "Crawford wanted to put down for questions 19 and 20." "I put down the information that was given to me by Crawford. I added nothing to it, I took nothing away from it." In addition, Law unequivocally testified that the amendment was complete and in its final form when it was executed by Crawford. Since Law was called by appellant as her witness as on cross-examination, she is bound by his testimony which was uncontradicted on these points. *Readshaw v. Montgomery,* 313 Pa. 206, 169 A. 135 (1933); *Karcesky v. Laria,* 382 Pa. 227, 114 A. 2d 150 (1955); *Amato v. Landy,* 416 Pa. 115, 204 A. 2d 914 (1964).

Appellant attempted to contradict Law's testimony by demonstrating that Law had made prior inconsistent statements as to the manner in which the amendment was prepared. A prior inconsistent statement by a witness may be used to impeach his credibility, but it is not substantive evidence of the truth of the matter stated. *Bizich v. Sears Roebuck and Company,* 391 Pa. 640, 645, 139 A. 2d 663 (1958). Thus, Law's allegedly inconsistent statements have no substantive value and are inadmissible to prove that he had improperly recorded Crawford's answers. They could, at best, only impeach Law's credibility and nullify the effect of his testimony at trial.

Neither Dr. Capito, Manhattan's medical examiner on the initial health questionnaire, nor Alfred Nusum, who was Crawford's co-employee and witness to the signing of the amendment, was called as a witness to support appellant's contention.

We agree, therefore, with the trial court that, "The record, however, is totally barren of any evidence that the forms did not reflect the answers given by the insured. Crawford was a literate adult. In each instance he signed the completed forms. There is no evidence

from which a jury might draw the inference asked for by plaintiff."

Appellant argues, however, that Manhattan should be estopped from claiming reliance on these misrepresentations. She contends that the company was in possession of information warning it of the falsity of the answers in the application. She concludes, therefore, that a duty devolved upon Manhattan to make an independent inquiry or be held bound by the knowledge such inquiry would have disclosed. She further contends that the insured should be estopped even though its limited investigation did not reveal the falsity of some of the answers.

Appellant's contention is based on several arguments, each of which must be considered separately.[3]

First, appellant contends that Law, the soliciting broker, had knowledge of the 1956 hospitalization, which knowledge should be imputed to Manhattan. Law denied such knowledge at trial. Even if appellant's contention is true, however, the application provided that, "No promise, disclosure or statement made by or to any agent, examiner or other person shall be deemed binding upon or made by or to the Company unless made in writing as a part of the application." Under such circumstances our courts have held that the knowledge of a soliciting agent who has no power to bind the company will not estop the company, unless such knowledge was brought to the attention of the company and acquiesced in by the company or its authorized officers. *Matovich v. Mutual Benefit Health and Accident Association,* 157 Pa. Superior Ct. 604, 43 A. 2d 648 (1945).

Second, appellant contends that Manhattan is estopped by reason of the inconsistencies between the re-

---

[3] The question of estoppel is governed by the law of the forum. 16 Appleman, Insurance Law and Practice, §9084, p. 605 (1944).

jected Northwestern application, which Manhattan had in its possession, and the amended Manhattan application itself.

A comparison of these applications, however, reveals that they are remarkably consistent. In both Crawford disclosed that he had been hospitalized in 1950 and 1955. In neither did he disclose that he had been hospitalized and had spat blood for a week in January 1956. Nor did he disclose in either application that he had an electrocardiogram in 1956, that he had been placed on a low salt diet, or that he had been treated throughout the spring of 1956 by Dr. Phillips.

It is true that there are inconsistencies between the Manhattan and Northwestern applications concerning the 1955 hospitalization. Thus, the answer in the Manhattan application relating to the 1955 hospitalization stated that Crawford had been in the hospital for a checkup but omitted mention of an electrocardiogram. The Northwestern application revealed, however, that his 1955 hospitalization had been for overexertion with a diagnosis of dyspnea and that he had an electrocardiogram at that time. These inconsistencies, however, cannot serve to estop Manhattan from relying on the false statements in the answers relating to the 1956 hospitalization.

*Franklin Life Insurance Company v. Bieniek*, 312 F. 2d 365 (3d Cir. 1962), involved an action by an insurer to rescind a policy of insurance on the ground that the application contained false answers relating to prior attendance by physicians, hospitalizations, medical treatments and examinations.

The trial court had found that four statements contained in the application were false, material and made with knowledge of their falsity. It held, however, upon the authority of *Love v. Metropolitan Life Insurance Company*, 99 F. Supp. 641 (E.D. Pa. 1951), that the

company was charged with knowledge of the true condition of the insured's health by virtue of a fifth ambiguous and unresponsive answer.

The Circuit Court, in an opinion by Judge FORMAN, reversed the trial court and directed the entry of judgment for the plaintiff. In applying Pennsylvania law the court stated at p. 375:

"At most, the Company had the duty to request a clarification of the imperfect answer in the absence of which it must be taken to have waived the materiality thereof. We think it is error to hold that the Company waived all of the misrepresentations in the application. . . . Were answer to question 24 the only imperfect one the conduct of the Company in issuing the policy would certainly have estopped it from the cancellation. But, as the trial court justifiably found in this case, the insured's answers to questions 7, 9, 16 and 18 were false, material and made with knowledge of their falsity. They were in clear violation of the insured's duty to make truthful answers. Since they were not excused by reason of the waiver of the imperfect answer to question 24, the Company is entitled to rescission."

With respect to the validity of *Love v. Metropolitan Life Insurance Company,* supra, upon which appellant relies, the *Bieniek* case explains at p. 374:

"While the decision of the District Court is in line with Love the latter is founded upon cases which do not support it. Those cited in the foregoing quotation confine themselves to the proposition that where an answer in an application is ambiguous, unresponsive or incomplete the insurer by issuing the policy has done no more than to estop itself from objecting to the materiality of the ambiguous, unresponsive or incomplete answer. They do not stand for a doctrine of constructive knowledge, as expressed in Love and by the District Court in this case."

Similarly, in the instant case, the ambiguity in the answers relating to the 1955 hospitalization could only serve to bar the company from objecting to the materiality of those answers. It could not, however, warn Manhattan of the falsity of the answers with respect to the 1956 hospitalization, the spitting of blood and the low-salt diet. Moreover, Crawford's simple statement in the amendment that he had a "check-up" for "one week" with Dr. Phillips in 1956 would certainly not excite any suspicion, nor would it place Manhattan upon any further inquiry. Cf. *Ratkovic v. Metropolitan Life Insurance Company*, 126 Pa. Superior Ct. 492, 191 A. 201 (1937).

Third, appellant contends that Manhattan should be estopped, because it knew that Crawford was not satisfied with several of the answers in the initial application, and, consequently, had insisted on certain changes in the amendment. We do not find that these facts would impose a greater duty to investigate upon Manhattan. To the contrary, Crawford's professed caution in completing the amendment, caution which supposedly exceeded even that of the company's examiner, could only negate any suspicion that the amendment, as submitted, was not complete and correct.

Fourth, appellant contends that Manhattan might have uncovered the truth through a more comprehensive investigation. As we have indicated, Manhattan had no duty to investigate under the facts presented in this case. It had every right to rely on the answers given by Crawford. *Shafer v. John Hancock Life Insurance Company*, 410 Pa. 394, 189 A. 2d 234 (1963) ; *Kizirian v. United Benefit Life Insurance Company*, 383 Pa. 515, 119 A. 2d 47 (1956).

Nonetheless, Manhattan did undertake both a physical and background investigation of Crawford which did not disclose the falsity of the answers in the application. We agree with the statement in 7 Couch,

Insurance 2d §35:84 (1961), that, "It is a general and salutary custom of life insurance companies, however, in the interest of their policyholders as well as themselves, to obtain through various channels information in respect to applicants for life insurance additional to that which the applicants themselves afford, and it would be unreasonable to hold that such an independent investigation of itself deprives an insurer of the right to rely upon representations made by an applicant. To have this effect, the investigation must disclose facts sufficient to expose the falsity of the representations of the applicant or to put the insurer upon further inquiry." See also *Apperson v. U. S. Fidelity and Guaranty Company*, 318 F. 2d 438 (5th Cir. 1963), and cases cited therein, and 169 A.L.R. 361.

Similarly, the fact that Manhattan's doctor examined Crawford and reported favorably on his health does not serve to estop Manhattan from denying liability where, as here, Crawford made knowing misrepresentations to the physician. See *Schware v. Home Life Insurance Company*, 134 Pa. Superior Ct. 53, 3 A. 2d 949 (1939); *Prudential Insurance Company of America v. Pagano*, 407 Pa. 473; 181 A. 2d 319 (1962); *Landau v. Mutual Life Insurance Company of New York*, 199 F. 2d 549 (3d Cir. 1952).

Finally, appellant contends that Manhattan should be estopped because it was aware of Crawford's heart condition and had already classified him as a substandard risk. We do not agree. That Manhattan was willing to accept the hazard upon disclosure of a "mild" heart attack in 1950 and a hospitalization in 1955 is no evidence that it would have accepted the risk if it knew of the recurrence of the heart condition in 1956 accompanied by a hospitalization and the spitting of blood. This hospitalization for treatment of arteriosclerotic heart disease and a pulmonary infarction within six months of Crawford's application substan-

tially increased Manhattan's risk. Crawford's misrepresentations were material under West Virginia law. Manhattan should not be compelled to pay for the added risk which it did not knowingly assume. Cf. *Fleet Messenger Service v. Life Insurance Company of North America,* supra; *Mutual Life Insurance Company v. Morairty,* 178 F. 2d 470 (9th Cir. 1949) ; *Great Northern Life Insurance Company v. Vince,* 118 F. 2d 232 (6th Cir. 1941) ; *Gallagher v. New England Mutual Life Insurance Company,* 33 N. J. Super. 128, 109 A. 2d 457 (1954) ; *Kizirian v. United Benefit Life Insurance Company,* supra.

In summary, Crawford's misrepresentations were sufficient to void the policy under West Virginia law. In addition there was no evidence in the record from which a jury could find that Manhattan was estopped by reason of knowledge which was sufficient to expose the falsity of the representations or to put it upon further inquiry. Accordingly, the order of the lower court granting judgment n.o.v. should be affirmed.

Judgment affirmed.