NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4265
_____


ADAM SPECTOR; SYLVIA SPECTOR

v.


FIREMAN'S FUND INSURANCE CO.; NATIONAL SURETY CORPORATION,

Appellants


_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 2-09-CV-01311)
District Judge Petrese B. Tucker
_____

Submitted Under Third Circuit LAR 34.1(a)
September 22, 2011
_____

Before: FISHER, HARDIMAN, and GREENAWAY, JR., *Circuit Judges.*

(Opinion Filed: September 29, 2011)


_____

OPINION
_____

1

GREENAWAY, JR., *Circuit Judge*.

Adam and Sylvia Spector (the "Spectors") filed suit against Fireman's Fund Insurance Company t/a/d/b/a National Surety Corporation ("Appellant") for breach of contract, bad faith, and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

Appellant appeals four orders of the District Court: (1) denial of Appellant's Motion for Summary Judgment; (2) judgment in favor of the Spectors after a bench trial; (3) denial of Appellant's Motion to Amend the District Court's findings and judgment; and (4) final judgment in favor of the Spectors. For the reasons explained below, we will affirm the District Court's orders with the exception of its award of attorney's fees to the Spectors in its final judgment.[1]

## I. BACKGROUND

We recite the pertinent facts primarily for the benefit of the parties. Appellees purchased their home for $1,300,000.00 in 2000. Appellant issued a homeowner's insurance policy (the "Policy") covering Appellees' home, which contained specific provisions relating to water damage. The Policy "do[es] not cover loss or damage caused directly or indirectly" by "water damage." (App. at 778a-79a.) However, there was an exception to this exclusion provided in the Policy's definition of water damage. "[C]ontinuous or repeated seepage or leakage of water or steam from any source" over a period of time was excluded:

---

[1] The Spectors concede the attorney's fees issue on appeal.

(3) . . . unless such loss is sudden and accidental.  Sudden and accidental shall include a physical loss that is hidden and concealed for a period of time.  A hidden or concealed loss must be reported to us no later than 30 days after the date appreciable loss or damage occurs and is detected or should have been detected.

(Id. at 779a.)  The Policy also excludes coverage for "(c) faulty, inadequate or defective . . . (2) design specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction."  (Id. at 779a-80a.)

In 2006, the Spectors, neither of whom possesses any specialized experience or knowledge regarding home construction or moisture intrusion, noticed that the paint on many of their windows was peeling.  The Spectors hired construction consultant Barry A. Bornstein ("Bornstein") to inspect their home and evaluate any potential problems with its windows and doors.  Bornstein inspected the Spectors' home, interviewed them about the problems they were experiencing, and created a report regarding the problems.  Bornstein's report, based on his visual inspection of open and accessible areas, did not contain commentary on possible problems between the external stucco walls and the internal drywall.

Bornstein recommended Jerry Yedinak ("Yedinak"), a stucco inspection and design consultant, to work on this project.  The Spectors hired Yedinak to inspect the external stucco of their home.  His inspection involved using probes to test moisture levels in the Spectors' home.  The Yedinak report indicated that just under 91% of the readings from the probes revealed moisture levels that were at acceptable levels and thirteen of the readings revealed potential problems.  Yedinak advised the Spectors that

3

they could not know the true condition of the substrate through the use of small probes. He informed them that deconstructing the walls would be necessary for a thorough assessment.

The Spectors hired Campbell Plastering and consulted with owner Barry Campbell, who advised them that to discover the problems existing behind the stucco, they had to expose the space between the stucco and the drywall. Campbell also advised the Spectors that their roof had been incorrectly installed. Based on this advice, the Spectors redid their roof and replaced their windows. After that process, Campbell began removing the stucco for inspection. In late November 2007, the Spectors learned the extent of the water damage to their home and were able to fully assess their systemic problems. (Id. at 9a.)

The Spectors filed a claim with Appellant on December 7, 2007. Appellant's notice provision required that a claimant inform Appellant within thirty days of discovery of hidden or concealed water damage to the property. The Spectors understood the notice provision to mean that where damage was hidden, each new discovery of damage began a new thirty day cycle for notice. Mr. Spector testified that when the walls were completely stripped off, he became "aware that [he] had massive problems that needed to be addressed." (Id. at 557a.)

Appellant sent Mark Massa, a property adjuster, to assess the Spectors' damage. Massa's damage report, along with photographs of his inspection and the Spectors' photographs of the project at various stages, were sent to Appellant's regional claims

4

adjuster, Jean Hargrove ("Hargrove"). Hargrove visited the Spectors' home. After meeting with the Spectors to review their claim and to discuss coverage, Hargrove denied their claim based on the Policy exclusion for defective construction and failure to comply with the thirty-day notice provision for water damage.

After their claim was denied, the Spectors filed a Complaint alleging breach of contract, bad faith, and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law in the Delaware County, Pennsylvania Court of Common Pleas. After the case was removed to federal court, Appellant moved for summary judgment on all three counts of the Appellees' Complaint. The motion was denied. Following a bench trial, the District Court ruled in favor of the Spectors on their breach of contract claim and awarded them damages of $104,432.00. The District Court ruled against the Spectors on the remaining claims. The District Court also awarded the Spectors attorney's fees in the amount of $37,135.38 and pre-judgment interest in the amount of $16,136.72, making the total judgment $157,704.10. Appellant's Motion to Amend the District Court's Findings and Judgment was denied. Appellant filed a timely notice of appeal.

## II.  JURISDICTION

The District Court had jurisdiction, pursuant to 28 U.S.C. § 1332.  We have jurisdiction, pursuant to 28 U.S.C. § 1291.  The parties do not dispute that Pennsylvania law applies in this diversity matter.[2]

## III.  ANALYSIS

A.  Proof of Damages

i.  Summary Judgment

The District Court's June 18, 2010 Order denying Appellant's summary judgment motion was brief.  However, drawing all inferences in the Spectors' favor, there were genuine disputes as to material fact regarding whether the Spectors met their burden of showing that the amount of costs attributable to home repair satisfied the water damage exception.

Appellant argues that the District Court erred in denying its Motion for Summary Judgment based on the Spectors' alleged failure to meet their burden of establishing that a discernable portion of the total amount spent on their home repairs was attributable to remedying water damages as opposed to construction defects.  Appellant argues that there were no genuine disputes of material fact as to whether the Spectors met this

---

[2] Under Pennsylvania law, an insurance contract is governed by the law of the state in which the contract was made.  Crawford v. Manhattan Life Ins. Co. of N.Y., 221 A.2d 877, 880 (Pa. Super. Ct. 1966).  "The interpretation of the scope of coverage of an insurance contract is a question of law properly decided by the court."  Regents of Mercersburg Coll. v. Republic Franklin Ins. Co., 458 F.3d 159, 163 (3d Cir. 2006) (citing Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (internal quotation marks omitted)).

burden. We exercise plenary review over the District Court's denial of summary judgment. Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 246 (3d Cir. 2010). Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a) (amended Dec. 1, 2010).

"[T]he general rule in Pennsylvania, as in most jurisdictions, is that if damages are difficult to establish, an injured party need only prove damages with reasonable certainty." ATACS Corp. v. Trans World Commc'ns, Inc., 155 F.3d 659, 669-70 (3d Cir. 1998) (noting that "reasonable certainty embraces a rough calculation that is not 'too speculative, vague or contingent' upon some unknown factor" and the standard does not preclude a damages award because of "some uncertainty as to the precise amount of damages incurred") (citing Scobell, Inc. v. Schade, 688 A.2d 715, 719 (Pa. Super. Ct. 1997)).

We agree with the District Court that there were genuine disputes of material fact regarding whether the Spectors met their burden. They presented their bank statement with copies of processed checks from the relevant time period of November to December 2007 made out to Campbell which went towards payment of Campbell's work related to hidden water damage discovered after removal of the external stucco. Although in discovery the Spectors did not present with certainty the amount spent on water damage, drawing inferences in the Spectors' favor, there existed genuine disputes of material fact as to which costs were attributable to home repair for defects versus water damage.

7

Specifically, the evidence included Mr. Campbell's deposition testimony that the Spectors paid him for new work, either before or within one to three days of work, and the Spectors' payment to Campbell in early November 2007. It also included the fact that Campbell began the stucco work in early to mid November, first by prepping the area for one to two days and then taking the stucco off for seven or eight days. (App. at 349a-52a.)

If the Spectors had no proof that money they spent in November and December 2007 was for newly discovered water damage, there would be no genuine disputes of material fact; however, their evidence and testimony, as well as Campbell's, created a genuine dispute of material fact.

ii. District Court's Final Judgment

Appellant also argues that at trial, the Spectors failed to meet their burden of proving damages under the policy. "When reviewing a judgment entered after a bench trial, we exercise plenary review over [the] [D]istrict [C]ourt's conclusions of law and its choice and interpretation of legal precepts." Battoni v. IBEW Local Union No. 102 Emp. Pension Plan, 594 F.3d 230, 233 (3d Cir. 2010) (quoting Am. Soc'y for Testing & Materials v. Corrpro Cos., 478 F.3d 557, 566 (3d Cir. 2007)) (internal quotations omitted). We review the District Court's findings of fact for clear error. Id.

> This is a highly deferential standard of review. Factual findings are clearly erroneous where the appellate court is "left with the definite and firm conviction that a mistake has been committed." Frett–Smith v. Vanterpool, 511 F.3d 396, 399 (3d Cir. 2008). It is not enough that we would have reached a different conclusion as the trier of fact; as long as the district court's factual findings are "plausible" when viewed in light of the entirety

8

of the record, we must affirm. Brisbin v. Superior Valve Co., 398 F.3d 279, 285 (3d Cir. 2005) (quoting Anderson v. City of Bessemer, 470 U.S. 564, 573–74, (1985)).

Prusky v. ReliaStar Life Ins. Co., 532 F.3d 252, 257-58 (3d Cir. 2008).

The District Court found, as a matter of law, that Appellant had no obligation to reimburse the Spectors for amounts spent to repair damages due to defective construction or to repair the roof or windows of the home, and ordered that Appellees not be reimbursed for such costs. (App. at 14a.) On the other hand, the Court did conclude that the Spectors suffered loss in the amount of $104,432.50 for hidden water damage. We review the District Court's calculation of damages for clear error. See Lerman v. Joyce Int'l, Inc., 10 F.3d 106, 113 (3d Cir. 1993). "The law does not permit a damages award to be based on mere guesswork or speculation, but rather requires a reasonable basis to support such an award." Helpin v. Trs. of Univ. of Pa., 10 A.3d 267, 270 (Pa. 2010) (citing Kaczkowski v. Bolubasz, 421 A.2d 1027, 1030 (Pa. 1980)). We find that the District Court did not err in finding a reasonable basis to support the award.

The District Court's finding was supported by evidence of the Spectors' four separate payments to Campbell in November and December 2007.[3] Mr. Spector's and Campbell's testimony supported the finding that the December 14 and December 21 checks were issued for the stucco work that Campbell was performing and that Spector

---

[3] The District Court did not include the November 5, 2007 payment in its calculation.

9

paid Campbell at or about the time that the work was performed.  The District Court's

damage award of $104,432.50[4] was not clearly erroneous.

B.  Notice to Fireman's Fund Insurance

Appellant claims that the Spectors failed to provide notice, as required in their

insurance contract, and that the District Court incorrectly interpreted notice under the

contract.  Specifically, Appellant claims that the Policy's notice provision is not a

"rolling notice" policy, restarting the 30-day notice period each time new damage is

discovered, and that the Spectors were obligated to give notice sooner than they did in

order to be covered under the Policy.

"The burden is on the insured, not the insurer, to introduce evidence to show that

the exclusion which appears to be triggered does not apply."  Air Prods. and Chem., Inc.

v. Hartford Acc. and Indem. Co., 25 F.3d 177, 180 (3d Cir. 1994) (citing N. Ins. Co. v.

Aardvark Assocs., 942 F.2d 189, 194-95 (3d Cir. 1991)).  A policy must be read as a

whole and its meaning construed according to its plain language.  Frog, Switch & Mfg.

Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999); Melrose Hotel Co. v. St.

Paul Fire and Marine Ins. Co., 432 F. Supp. 2d 488, 495 (E.D. Pa. 2006).  In this case, the

exception to water damage coverage exclusion in the Policy requires that "[a] hidden or

concealed loss must be reported to us no later than 30 days after the date appreciable loss

or damage occurs and is detected or should have been detected."  (App. at 779a.)

---

[4] The District Court's final Order states that judgment is entered in favor of the Spectors
in the amount of $104,432.00.  We need not resolve this discrepancy.

Based on the plain language of the policy, nature of the hidden damage, and inspections that the Spectors had on the house, we are not left with the definite and firm conviction that the District Court made a mistake in finding that the Spectors timely notified Appellant on December 7, 2007 because the hidden water damage was not appreciable until within 30 days prior, when Campbell began removing the stucco.

The Spectors were required to notify Appellant within 30 days of appreciable loss or damage, which by its common usage is loss or damage that is "capable of being measured or perceived," as defined in Black's Law Dictionary (8th ed. 2005) and Merriam-Webster Dictionary (11th ed. 2005).

The record provides support for the finding that appreciable damage was discovered within 30 days before December 7, 2007.[5] Spector testified that prior to the removal of the walls, it was "physically impossible" to see the damage. (Id. at 556a.) Campbell had explained to Mr. Spector that there was "no way" that he could "actually know what is going on behind stucco unless you rip the stucco off, because you can't see through it." (Id. at 541a.)

Campbell erected scaffolding and began removing the stucco once the new roof was on and the windows in place; according to his testimony, that work was done in early to mid November and continued into December. Campbell testified that it took seven or eight days after doing preparation work, which started at the beginning of November, to

---

[5] Because we find that the Spectors satisfied the notice requirement, Appellant's argument that the District Court improperly relied on the Schmader claim in adopting a rolling notice theory is irrelevant.

11

remove the stucco, and by the middle of November, the stucco was completely off and the damage could be clearly seen.[6] Spector also testified that he did not know of the hidden damage until the walls were taken off and the damage was revealed in the middle of November.

Spector's testimony that he would pay Campbell prior to starting work on a new phase, and that he introduced a cancelled check made out to Campbell on November 5, 2007 for $42,493.00 also corroborates the notion that the water damage discovery occurred in this time frame. (Id. at 549-52a.)

In light of the record, we are not "left with the definite and firm conviction that a mistake has been committed" in the District Court's finding that the Spectors' satisfied notice to Appellant under the Policy.[7] Frett–Smith v. Vanterpool, 511 F.3d 396, 399 (3d Cir. 2008).

---

[6] Additionally, the record supports a finding that the expert reports, which Appellant claims should have triggered notice, did not reveal damage that was capable of being measured, in part, because it could not be seen. The Bornstein report stated that "[t]here was no invasive, exploratory examination of the exterior building envelope," (App. at 816a), and recommended further stucco investigation and moisture analysis by Yedinak. Yedinak's report pointed out construction and material defects not covered under the policy and concluded "possible water intrusion and damages." (Id. at 827a.)

[7] We find two of the District Court's findings of fact – findings 22 and 34 – were in error; however, they are harmless because it is "highly probable that [they] did not affect the outcome of the case." Moyer v. United Dominion Indus., Inc., 473 F.3d 532, 545 (3d Cir. 2007) (internal quotation marks and citation omitted). The District Court found that when Hargrove inspected the Spectors' home on January 11, 2008, ninety percent of the work had been completed. In fact, at the time of Massa's inspection (not Hargrove's) on December 18, 2007, ninety percent of the work had already been completed. Further, the District Court stated that Massa was consulted in the Schmader matter. Massa saw the house when repairs to it were ninety percent complete and Hargrove had access to all of

12

C.  Attorney's Fees

Finally, Appellant argues that the District Court erred in awarding Appellees

$35,000 in attorney's fees on the breach of contract claim because the Policy contained

no attorney's fee provision and no applicable statute authorizes such an award, a point

that the Spectors concede.  Accordingly, we will reduce the District Court's damages

award by $35,000 for the fees awarded by the District Court.

## IV.  CONCLUSION

For the reasons discussed above, we will affirm the District Court's summary

judgment order, denial of Appellant's Motion to Amend, and grant of final judgment in

favor of Appellees.  However, we will reverse the District Court's determination to award

Appellees attorney's fees.  On remand, the District Court is directed to adjust its pre-

judgment interest award accordingly.

---

the information that Massa obtained, including Campbell's photos of the work as it progressed.  Additionally, Massa's non-involvement in the Schmader matter does not alter our decision.  The Spectors concede these errors.

Appellant also asserts that additional findings of fact are in error – i.e., findings 7, 13, 15 and 33.  Unlike the factual findings discussed above, these findings are not clearly erroneous.  See Prusky v. ReliaStar Life Ins. Co., 532 F.3d 252, 257-58 (3d Cir. 2008).