# CHARLESTON.

## BOB WOODY

### *v.*

### CONTINENTAL LIFE INSURANCE COMPANY

(No. 6129)

Submitted February 8, 1928.   Decided February 21, 1928.

1. INSURANCE—*"Misrepresentation," in Insurance, is False Representation of Material Fact, Tending to Induce Entry Into Contract on Less Favorable Terms.*

   A misrepresentation in insurance is a false representation

of a material fact by one of the parties to the other, tending directly to induce such other to enter into the contract, or to do so on less favorable terms to himself, when without such representation such other party might not have entered into the contract at all, or done so on different terms. (p. 217.)
(Insurance, 32 C. J. § 492.)

2. SAME—*Obtaining Specific Answer in Life Insurance Application is Ordinarily Proof That Parties Regarded Matter as Material; Specific Answer in Application for Life Insurance Will Ordinarily be Treated as Material; Misrepresentation That Insured Had Not Had Cancer Held to Prevent Recovery on Life Policy.*

The fact that a specific answer is sought and obtained to a question in an application for life insurance is, ordinarily, proof that the parties regarded the matter material, and in such case the answer will be treated as a material representation. *Stockton* v. *Continental Life Insurance Company*, 105 W. Va. 240, decided contemporaneously herewith. (p. 220.)
(Insurance, 32 C. J. § 514; Life Insurance, 37 C. J. § 178.)

3. SAME—*Insurer, Setting up Defense That Life Policy Was Secured Through Fraudulent Misrepresentation, Need Not Tender Back Premiums Before Jury is Sworn.*

In an action to recover on a policy of insurance, it is not necessary that the insurer, to maintain the defense that the policy was secured through fraudulent misrepresentations, should tender back the premiums paid before the jury was sworn on the trial. (p. 220.)
(Insurance, 32 C. J. § 411; Life Insurance, 37 C. J. § 386.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, McDowell County.

Action by Bob Woody, the beneficiary named in a certain insurance policy issued by the Continental Life Insurance Company to Mattie Marshall, against the Continental Life Insurance Company for the purpose of recovering the face of the policy. On appeal from the justice's court, the circuit court, after having directed a verdict for the defendant, later set its order aside and awarded a new trial. It is from this latter order that the defendant brings error.

*Judgment reversed; verdict reinstated, judgment entered thereon.*

*Sanders, Crockett, Fox & Sanders,* for Plaintiff in error.

*Joseph M. Crockett* and *Charles A. Tutwiler,* for defendant in error.

WOODS, JUDGE:

This action was instituted before a justice by the beneficiary named in a certain insurance policy issued to Mattie Marshall by defendant company for the purpose of recovering the face of the policy—$300.00.   On appeal, after having directed a verdict for the defendant, the circuit court of McDowell county at a later date set the same aside and awarded the plaintiff a new trial.  The defendant maintains that the verdict was supported by the law and the evidence and should not have been set aside.

The principal defense interposed was that the policy was procured by fraudulent representations material to the risk, made by insured in regard to the state of her health.

A misrepresentation in insurance is a false representation of a material fact by one of the parties to the other, tending directly to induce such other to enter into the contract, or to do so on less favorable terms to himself, when without such representation such other party might not have entered into the contract at all, or done so on different terms.   So the application here is only admissible, together with other evidence, to prove fraud in the procurement of the policy.   A false statement made in the application for a policy is none the less false because made therein, and if it is an element or fact in a scheme of fraud to procure the issuance of a policy, under circumstances under which it would not be issued if the insurer had been advised of the true situation, it stands upon the same footing as if made in any other paper or way. *Life Insurance Company* v. *Logan,* 9 Ga. App. 503; *Johnson*

*v. Insurance Company,* 134 Ga. 800. Some courts hold that, even in case of a misrepresentation, the knowledge or intent of the applicant is immaterial; while others hold that there is no misrepresentation avoiding the policy if the applicant was ignorant of the existence of the disease. The true rule in the case of representations seems to be that, to render a policy void the misrepresentations must be such as to constitute legal fraud; that is, if the false answer was not intentionally made, it will avoid the policy only where the facts are such that the assured must be determined to be stating his own knowledge and not his opinion when he should have made no statement if he did not know the facts. *Schwarzbach* v. *Ohio Valley Protective Union,* 25 W. Va. 622; 14 R. C. L., pp. 249, 250. So, if it appears from the questions and answers respecting the applicant's health, construed as a whole, that his answers are mere expressions of opinion or belief, the falsity of one such answer will not avoid the policy unless the applicant knew or should have known the truth of the matter and answered in bad faith.

The clause in the policy that is claimed to have been violated is the one that provides that "This policy shall be void if upon its date and delivery the insured be not alive and in sound health." The evidence here reveals that the insured was a woman, unable to read and write, and that the agent soliciting the policy wrote the answers in the application, and signed her name. This policy was taken out on the 24th day of November, 1924, and the insured died June 14, 1926. The information obtained by the application necessarily related to the previous condition of the health of the insured at the time of the issuance of the policy. It is contended that the insured had cancer at the time of taking out the policy, and later died of that malady. The question on the application relating to this disease reads: "Has the life proposed ever suffered from any of the following diseases? Consumption, Asthma, Spitting of Blood, Habtual Cough, Apoplexy, Paralysis, Pellagra, Heart Disease, Insanity, Fits or

Convulsions, Rheumatism, Disease of the Liver or Kidneys, Cancer, Ulcers, Delirium Tremens, Syphilis, Gravel, Stricture or Accident of any Kind?'' To which question the answer ''None'' was given.

It appears in evidence that the insured was admitted into a hospital on the 14th day of September, 1923; that the disease with which she was suffering was diagnosed as cancer; that on the day following she was operated upon for cancer of the breast, and her right breast removed; that she remained at the hospital for a period of twenty-three days. Dr. Brown, surgeon and house physician of the hospital, continued to treat her for the disease until she left Keystone sometime thereafter, in 1924, and he stated that she was at that time a skeleton, emaciated, that ataxia had set in, that there was a depletion of the whole system, and that it was a case of hopeless malignancy. Assured died June 14, 1926. The claimant's certificate of loss recites: ''What was the cause of her death? Cancer of the breast. When was health of deceased first affected? About a year before death. How long was deceased confined to house by last illness? About six months.'' The attending physician's certificate of death states as the cause of death, ''carcinoma of mammary glands'' (cancer). Did she know she was suffering with this disease? After the removal of the cancer Dr. Jones talked to her about her condition while treating her. And in answer to a question: ''Did she know she had cancer?'' replied, ''Yes, sir''. Another question contained in her application was ''Has the said life been under treatment in any dispensary, hospital or asylum or been an inmate of almshouse or other like institutions?'' To which the assured answered ''No.'' The agent who took the application testified that he read the two questions here considered to the assured and wrote the answers thereto as she made them.

From the uncontroverted facts as outlined, the conclusion is inescapable that the assured with knowledge of the fact that she had cancer, represented in her application that she

had never suffered from such disease. Moreover, she represented that she had never been under treatment in a hospital, whereas the fact was that she had been an inmate of a hospital and had been operated upon for cancer therein, in less than a year before she made her application for insurance. But, are the facts misrepresented material to the risk? In this regard it seems to be firmly established that ordinarily by making inquiry concerning the existence or non-existence of a particular fact or facts in such case, the same is made material, for the reason that the parties must be considered as having thereby, for themselves, declared that any answer or answers should be regarded as material. 3 Joyce on Insurance, (2nd ed.) Sec. 1914; *Myers* v. *Mutual Life Insurance Company,* 83 W. Va. 391; *Marshall* v. *Insurance Association,* 79 W. Va. 121; *Schwartzbach* v. *Protective Union, supra; Logan* v. *Life Assurance Society,* 57 W. Va. 384; *Stockton* v. *Continental Life Insurance Company,* 105 W. Va. 240, (decided contemporaneously herewith). The representations here made being peculiarly within the knowledge of the insured, and untrue, the law says she is guilty of a legal fraud, though she may not have intended to deceive, and her beneficiary will be bound by the effect thereof. *Schwartzbach* v. *Protective Union, supra.* The court was warranted in directing a verdict as to this phase of the case.

However, it was contended below by appellee, and is here, that appellant could not maintain its defense unless it tendered back the premiums it had received upon the contract sued on before trial. It is defending on the ground that the contract was procured by fraud. A right of action for rescission or specific performance may depend upon a previous tender, but a defense that merely goes to the question whether the contract was void because of fraud practiced in its obtention does not depend upon a tender by the defendant of what it may have received under the contract. So, it is a general rule that a return of the premiums is not essential to the avoidance of a policy, nor is its retention a waiver,

where the insured was guilty of fraud in obtaining the policy. 14 R. C. L., sec. 370, title "Insurance"; 32 C. J., sec. 411, "Insurance." This doctrine finds support in most of the states of the Union, with the exception of Indiana. While appellee relies on the case of *Metropolitan Insurance Company* v. *Moore*, 117 Ky. 651, we find that this case was practically overruled by the Supreme Court of Kentucky in the later well-considered case of *Provident Savings Life Assurance Company* v. *Whayne's Admr.*, 131 Ky. 84, by the application of the general rule stated above. We do not decide, however, who is entitled to the premiums paid. That question is not presented.

*Judgment reversed; verdict reinstated, judgment entered thereon.*