475 S.E.2d 116

Gary L. ROBERTSON and Janet
S. Robertson, Plaintiffs
Below, Appellees,

v.

Gene FOWLER; Galigher Ford, Inc., a West Virginia Corporation; Car Spot, Inc., a West Virginia Corporation; Charles F. Runyon, Jr.; Bank One, Formerly Known as The Wayne County Bank, a National Banking Association; and Corky Runyon, Defendants and Third–Party Plaintiffs Below, Appellees.

and

CAR SPOT, INC.; Charles F. Runyon, Jr.; and Corky Runyon, Defendants and Third–Party Plaintiffs Below, Appellees,

v.

UNITED STATES FIDELITY & GUARANTY COMPANY, Third–Party Defendant Below, Appellant.

No. 22892.

Supreme Court of Appeals of
West Virginia.

Submitted March 5, 1996.

Decided July 12, 1996.

Robert L. Godbey, Huntington, for the Robertsons.

Richard Thompson, Huntington, for Car Spot, C.F. Runyon, Jr. and Corky Runyon.

Johnnie E. Brown, Molly Underwood–Korwan, McQueen & Brown, Charleston, for United States Fidelity & Guaranty Company.

Daniel J. Konrad, Huntington, for Bank One.

WORKMAN, Justice:

United States Fidelity & Guaranty Company ("USF&G") appeals from an adverse summary judgment ruling, directing it to defend and indemnify Appellee Car Spot, Inc. ("Car

Spot") in connection with a used vehicle that Car Spot sold. Based on our conclusion that the Circuit Court of Cabell County erroneously applied the doctrine of reasonable expectations, we reverse.

■ The plaintiffs below, Gary and Janet Robertson, filed a complaint on October 6, 1993, in the circuit court against Gene Fowler, Galigher Ford, Inc., Car Spot, Charles F. Runyon, Jr., Bank One, and Corky Runyon.[1] Included in the complaint were averments that: the odometer had been tampered with;[2] the catalytic converter had been removed or rendered inoperative; the vehicle had a bad paint job; and the vehicle had defective brakes, a defective transmission, a defective motor, and defective power windows. Car Spot filed a third-party complaint against USF&G seeking a declaration that USF&G had a duty to defend and indemnify Car Spot under the terms of a commercial insurance policy issued to Car Spot.

In connection with the third-party complaint, both Car Spot and USF&G filed motions for summary judgment. On April 8, 1994, the court heard arguments on Car Spot's motion and by order entered on June 15, 1994, granted summary judgment in favor of Car Spot. USF&G appeals the lower court's ruling which requires it to defend and indemnify Car Spot in connection with the Robertsons' claims.

Car Spot purchased an insurance policy[3] from USF&G for the policy period of May 17, 1992, to May 17, 1993, for an annual premium of $12,541. The policy provided coverage for premises liability and garage operations as well as an endorsement for false pretense coverage. The false pretense endorsement provided:

A. COVERED AUTOS is changed by adding the following:

Any "auto" you have acquired is a covered "auto" under False Pretense Coverage.

B. PHYSICAL DAMAGE COVERAGE is changed as follows:

1. The following is added:

We will pay for "loss" to a covered "auto" under:

*False Pretense Coverage. Caused by:*

*a. Someone causing you to voluntarily part with the covered "auto" by trick, scheme or under false pretenses.*

*b. Your acquiring an "auto" from a seller who did not have legal title.*

(emphasis supplied)

In ruling for Car Spot, the circuit court found that:

6. Third-party defendant U.S.F. & G. knew the type of business of its insured (the used car business) and was in a position to realize and appreciate the exposure of its insured to these kinds of actions.

7. Third-party plaintiff [Car Spot] had a reasonable expectation of coverage based on the coverage titled false pretense coverage and purchased from third-party defendant, U.S.F. & G.

*Control Co. v. Monticello Ins. Co.*, 319 S.C. 12, 459 S.E.2d 318, 319 (App.1994), *aff'd,* — S.C. ——, 468 S.E.2d 304 (1996).

---

**1.** Gene Fowler is the prior owner of a 1988 Buick Le Sabre that the Robertsons purchased from Car Spot. Car Spot had previously purchased the Buick from Galigher Ford. Charles Runyon is the majority shareholder and President of Car Spot. Corky Runyon is the Car Spot employee who sold the vehicle to the Robertsons. Car Spot is an agent for Bank One with regard to vehicle financing.

**2.** Car Spot states in its brief that "[t]he substantial major allegation in the underlying complaint was odometer tampering." Conceding that many of the Robertsons' averments would not come under the coverage provided by the USF&G policy, Car Spot correctly notes that inclusion of some non-covered claims in a complaint does not abrogate the insurer's duty to defend when the complaint raises claims that are covered by the policy. *See Isle of Palms Pest*

**3.** The parties disagree regarding whether the policy issued by USF&G is a commercial general liability policy or a garage policy. The court below specifically found that the policy issued was a garage policy. Garage policies typically are issued to car dealerships to provide coverage for: premises liability; liability for mechanical and body shop operations; liability for owned automobiles on the dealership's lot; physical damage to vehicles owned by the dealership; and liability for damages to customers' vehicles that occur when such vehicles are brought in for repair. On the declarations page of the policy, "garage" coverage is the only type of coverage identified. We find no error with the court's finding on this issue.

The lower court concluded that the false pretense endorsement when viewed in conjunction with the doctrine of reasonable expectations "oblige[d] coverage and a duty to defend."

■ USF&G argues that the circuit court erred by applying the doctrine of reasonable expectations without first finding that the policy language was ambiguous. We defined the doctrine of reasonable expectations in *National Mutual Insurance Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356 S.E.2d 488 (1987): "With respect to insurance contracts, the doctrine of reasonable expectations is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." *Id.* at 736, 356 S.E.2d at 490, Syl. Pt. 8. We explained further that "[i]n West Virginia, the doctrine of reasonable expectations is limited to those instances ... in which the policy language is ambiguous." *Id.* at 742, 356 S.E.2d at 496.

■ We examine the policy language to determine if any ambiguity exists to permit the application of the doctrine of reasonable expectations. Since the trial court looked to the false pretense endorsement as the source for coverage, we start with those policy provisions. There are clearly two scenarios under which the false pretense coverage applies: a. someone causing Car Spot to "voluntarily part" with the covered vehicle "by trick, scheme or under false pretenses[;]" or b. Car Spot acquiring a vehicle "from a seller who did not have legal title."

USF&G correctly explains why the "trick, scheme or under false pretenses" condition of coverage is inapplicable. The intended coverage is for instances when a car dealer entrusts an individual with a vehicle for an ostensible test drive and the individual fails to return the car. The additional conditions placed within the false pretense endorsement demonstrate that a failure to return a vehicle

following a purported test drive is the first scenario under which coverage exists: "The insurance ... does not apply unless (1) You had legal title to the covered 'auto' prior to the 'loss;' and (2) You make every effort to recover the covered 'auto' when it is located." Also, the insured is required to "obtain a warrant, as soon as practicable, for the arrest of anyone causing a 'loss' defined within the False Pretense Coverage." The facts of this case are utterly devoid of any allegations that the Robertsons effected a trick, scheme or false pretense which resulted in a loss to Car Spot. Accordingly, the test drive/failure to return type of false pretense coverage is clearly not invoked by the facts of this case.

In support of its contention that USF&G has a duty to defend and indemnify, Car Spot relies on the second type of false pretense coverage under the policy. This coverage applies when the insured acquires a vehicle "from a seller who did not have legal title." According to Car Spot, coverage is invoked because Car Spot lacked legal title at the time it acquired the vehicle from Galigher Ford given the false statement of odometer mileage that appeared on the title. This argument is flawed for several reasons. First and foremost, the false pretense coverage purchased by Car Spot is first party coverage. The coverage Car Spot purchased was for losses suffered directly by it as opposed to third-party coverage for losses that parties, such as the Robertsons, experience and then look to Car Spot for indemnification. USF&G maintains that Car Spot was familiar with the first-party nature of the false pretense coverage based on the fact that Car Spot made a claim in October 1991 under that portion of the policy and negotiated a settlement with USF&G for that claim.[4] While the claim for which Car Spot seeks false pretense coverage is clearly third-party in nature, the USF&G policy does not provide this type of coverage.

■ A second problem with Car Spot's attempt to rely on the title provision to invoke false pretense coverage is the absence

---

4. Through that claim, Car Spot sought reimbursement in the amount of $8,246.20 for its purchase of a vehicle from Frank Horney, d/b/a Huntington Chrysler Plymouth, due to the inability of Car Spot to procure legal title because Huntington Chrysler Plymouth had not paid the note held by the bank on the car.

of any proof that Car Spot lacked legal title to the vehicle. Reasoning that a violation of West Virginia Code § 17A–3–12a(a) (1991)[5] negates the legality of the car's title, Car Spot contends that it acquired the subject vehicle from a seller (Galigher Ford) who did not have legal title.[6] The problem with this argument is that a violation of West Virginia Code § 17A–3–12a does not result in a title defect. The only penalty provided for a violation of the statute is a misdemeanor conviction plus a fine of $200 to $1,000 or imprisonment in the county jail for up to six months. *See* W. Va.Code § 17A–3–12a(f). Since a violation of this statute has no effect on ownership or title, we find no merit to Car Spot's position that the false odometer reading listed on the title requires coverage under the legal title section of the false pretense endorsement.

■ Alternatively, Car Spot looks to the definitional section of the policy for coverage. The term that Car Spot relies on is "Garage Operations" which is defined to include: "all operations necessary or incidental to a garage business[.]" Car Spot reasons that this definition creates coverage because the purchase of vehicles by Car Spot was incidental to its business. The speciousness of this contention is obvious as a definition cannot be looked to separately from the policy as a whole in an attempt to create coverage. The applicable liability language requires USF&G to pay "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'accident' and resulting from 'garage operations' other than the ownership, maintenance or use of covered 'autos.' " In this case, there was no "accident"[7] which would trigger coverage.

■ The majority of Car Spot's arguments are predicated on the reasonable expectations doctrine. Before the doctrine of reasonable expectations is applicable to an insurance contract, there must be an ambiguity regarding the terms of that contract. *See McMahon & Sons*, 177 W.Va. at 742, 356 S.E.2d at 496. USF&G argues that the lower court applied the doctrine without first finding an ambiguous policy term. Car Spot contends that the ambiguity was implicit from the court's decision to apply the reasonable expectations doctrine.[8] Absent an explicit finding of ambiguity, however, any application of the reasonable expectations doctrine was premature.

---

5. West Virginia Code § 17A–3–12a(a), which is a codification of the Federal Motor Vehicle Information and Cost Savings Act, 15 U.S.C. § 1988 (1994) (repealed 1994), provides that:

    the owner and the purchaser of a motor vehicle must complete the odometer disclosure form on the certificate of title before a new certificate of title may be issued for a transfer of ownership of a vehicle. The odometer disclosure form on the certificate of title shall contain the following information:
    (1) The odometer reading at the time of transfer;
    (2) Certification by the owner that to the best of his knowledge the odometer reading reflects:
    (A) The actual mileage the vehicle has been driven;
    (B) The amount of mileage in excess of the designated mechanical odometer limit of ninety-nine thousand, nine hundred ninety-nine miles; or
    (C) A difference from the number of miles the vehicle has actually been driven and that the difference is greater than that caused by odometer calibration error, and that the odometer reading is not the actual mileage. (3) Certification by the owner that while the motor vehicle was in his possession:

    (A) Neither he nor any person altered, set back or disconnected the odometer;
    (B) The odometer was altered for repair or replacement purposes and that the actual mileage registered on the repaired or replacement odometer was identical to that mileage before such service; or
    (C) That the odometer reading is not the actual mileage and that the true mileage is unknown to him.

6. We note again that because the false pretense endorsement of the USF&G policy provides first-party coverage, a claim based on lack of legal title would have to be made directly by Car Spot for its loss, rather than by a third-party such as the Robertsons.

7. An "accident" is defined under the policy as "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.' "

8. Car Spot argues that such a finding was necessarily an antecedent of the court's decision to apply the doctrine of reasonable expectations. We do not accept this theory.

■ Car Spot maintains that because USF&G was familiar with the nature of its business, it was reasonable for Car Spot to expect that it had coverage for all the inherent risks associated with the sale of cars, including odometer tampering. This is clearly an illogical extension of the doctrine of reasonable expectations. An insurer has no obligation to provide coverage for every possible risk its insured may face. USF&G indicates that separate odometer tampering coverage is available, but that Car Spot did not purchase such coverage.[9]

■ The law is clear that "[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syl. Pt. 1, *Christopher v. United States Life Ins. Co.*, 145 W.Va. 707, 116 S.E.2d 864 (1960). As we stated in *Deel v. Sweeney*, 181 W.Va. 460, 383 S.E.2d 92, (1989), "[i]t is well-settled law in West Virginia that '[w]here provisions of an insurance policy are plain and unambiguous and where such provisions are not contrary to a statute, regulation or public policy, the provisions will be applied and not construed.'" *Id.* at 462, 383 S.E.2d at 94 (quoting Syl. Pt. 2, *Shamblin v. Nationwide Mut. Ins. Co.*, 175 W.Va. 337, [338], 332 S.E.2d 639, 640 (1985)). Moreover, when the language is plain and unambiguous, the court must refrain from application of rules of construction in order to find coverage for a risk of loss not intended nor contemplated within the contract. *See Transamerica Ins. Co. v. Arbogast*, 662 F.Supp. 164, 168 (N.D.W.Va.), *aff'd*, 835 F.2d 875 (4th Cir.1987).

Upon examination, we find no ambiguous terms in the USF&G policy which would permit application of the doctrine of reasonable expectations. Moreover, we agree with USF&G's argument that odometer tampering is "conduct [that] is entirely foreign to the risk insured against[ ]" under the policy at issue. *Horace Mann Ins. Co. v. Leeber*, 180 W.Va. 375, 378, 376 S.E.2d 581, 584 (1988).

■ As an ancillary matter, we distinguish the doctrine of reasonable expectations from the law of misrepresentation. We defined a misrepresentation as it pertains to insurance in syllabus point one of *Woody v. Continental Life Insurance Co.*, 105 W.Va. 215, 141 S.E. 880 (1928), *superseded by statute on distinguishable grounds as stated in Powell v. Time Insurance Co.*, 181 W.Va. 289, 382 S.E.2d 342 (1989),

A misrepresentation in insurance, is a false representation of a material fact by one of the parties to the other, tending directly to induce such other to enter into the contract, or to do so on less favorable terms to himself, when without such representation such other party might not have entered into the contract at all, or done so on different terms.

105 W. Va. at 215–16, 141 S.E. at 880; *cf.* W. Va.Code § 33–6–7 (1996) (addressing effect of misrepresentations made by insured in application). Car Spot's President, Charles F. Runyon, states in his affidavit that:

3. I specifically requested and paid for false pretense coverage.

4. I believed, expected and was informed that I would have insurance protection in the event of suit as set forth in Civil Action No. 93–C–2031.

5. I expected and believed I paid for U.S.F. & G. to defend and indemnify if I was sued as a result of false pretenses.

These general averments, however, are not sufficient factually to suggest that an actual misrepresentation occurred within the meaning of *Woody*. The general nature of these averments suggests the lack of a specific representation by USF&G regarding a material fact. Noticeably absent from the affidavit are any statements to the effect that USF&G informed Mr. Runyon that he would have coverage if he was sued in connection with the purchase of an automobile with a

---

9. Car Spot argues that USF&G should not be able to argue the existence of coverage specifically designed for odometer tampering. While we agree that such separate coverage clearly does not impact on the instant coverage issue, it is not error, as Car Spot suggests, to merely note the availability of such separate coverage.

tampered odometer. This case, then, does not present a case of misrepresentation.

Based on the foregoing, we reverse the decision of the Circuit Court of Cabell County.

Reversed.