**AMERICAN SAMOA POWER AUTHORITY, Plaintiff**

**v.**

**NATIONAL PACIFIC INSURANCE CO., Defendant**

High Court of American Samoa
Trial Division

CA No. 39-92

March 31, 1997

Before KRUSE, Chief Justice, and LOGOAI, Associate Judge.

Counsel: For Plaintiff, Marshall Ashley and Mason Martin
 For Defendant, Brian M. Thompson

Opinion and Order:

Plaintiff, American Samoa Power Authority ("ASPA"), brought this action to recover monies for a damaged turbine, purportedly insured by defendant, National Pacific Insurance ("NPI").

## FACTS

ASPA is the local power authority in American Samoa which supplies the territory with electrical power. Its generation equipment includes turbines which are serviced and repaired under contract by an outside servicer, U.S. Turbine. When a turbine has to be shipped off-island for repairs, ASPA rents a temporary replacement turbine from U.S. Turbine.

In 1988 a problem developed with one of ASPA's turbines which required its shipment off-island. ASPA rented a replacement turbine from U.S. Turbine. Its rental agreement with U.S. Turbine required ASPA to insure the rented turbine with All Risk Physical Insurance ("All Risk"). In pursuance of its rental obligations, ASPA sought a number of bid proposals from the various insurance companies and brokers on-island at the time, including NPI. NPI's initial bid, put together by its reinsurer Munichre New Zealand Services Limited ("Munichre"), was not initially taken up by ASPA. Subsequently, however, ASPA did procure insurance for the rented turbine from NPI beginning in 1988, and renewed its policy with NPI on several occasions. However, neither ASPA nor NPI produced the 1988 version of the insurance policy.

On May 24, 1991, the insured turbine broke down. On June 3, 1991, ASPA notified NPI of its imminent claim. NPI denied the claim on the basis of limiting language contained in the 1991 version of the policy which states that NPI was responsible for damage "due solely to the negligence of the American Samoa Power Authority or their employees." Both parties agree that the turbine break down was not due to the negligence of either ASPA or its employees.

## DISCUSSION

Although the 1991 insurance policy clearly contains the limiting language which would preclude ASPA's claim, ASPA argues that 1991 policy did not embody the insurance agreement it had concluded with NPI. Accordingly, ASPA asserts three different basis for reformation of

the policy: ambiguity, mutual mistake, and a quasi-fraud claim that the 1991 contract was changed from the initial policy which ASPA renewed.

■ First it must be stated that contracts of insurance are, as a rule, construed in accordance with general principles of contractual construction. *See Asifoa v. NPI,* CA No. 60-92, Slip Op. at 2 (Trial Div. Nov. 6, 1996). Terms in an insurance contract are taken in their plain, ordinary and popular sense. *Id.*

I. Ambiguity

■ When the language of an insurance policy is plain and unambiguous, the court must refrain from application of rules of construction in order to find coverage for a risk of loss not intended or contemplated within the contract. *See Robertson v. Fowler,* 475 S.E. 2d 116, 121 (W.Va. 1996). ASPA argues that the 1991 policy is ambiguous. Specifically, it argues that the limiting language discussed above is in conflict with Condition 3 of the policy which states that "the Insured shall at his own expense take all reasonable precautions and comply with all reasonable recommendations of the insurers . . . and comply with statutory requirements and manufacturer's." ASPA argues that these two provisions, when read together, cover ASPA for its own negligence and that of its employee's, yet requires ASPA to "take all reasonable precautions. . . to prevent loss or damage."

■ The language is plainly ambiguous, and as such the court can consider parole evidence on the issue of coverage. The oral parole evidence offered at trial was conflicting. ASPA's witnesses testified that they had originally asked for and received an "All Risk" policy in 1988. NPI's witnesses, on the other hand, stated that the coverage given in 1988 was the same as the coverage indicated in the 1991 policy. Specifically, Martin Kreft of Munichre, testified that he had issued the limited coverage that NPI's manager at the time, Arnold Carter, had asked him to issue, and that the premium charged and paid was commensurate with the limited risk insurance. Mr. Kreft's produced copies of correspondence bearing 1988 dates between his office and Arnold Carter, which revealed discussions pertaining to a limited--ASPA negligence only--coverage proposal.

Coupled with the fact that the only actual policies in evidence all contain the limiting language, we are inclined to accept Mr. Kreft's testimony as more persuasive regarding the extent of coverage initially issued by NPI to ASPA. In contrast, we find the somewhat vague recollections of ASPA's contracting officer, Victor Stanley, to be less convincing. Mr. Stanley alluded to a written solicitation he had sent to NPI at the outset for "all risk" insurance, but as it turns out, this writing is also non existent

at this time. In these circumstances, we conclude that ASPA has failed to show by a preponderance of the evidence that the original and subsequent policies issued for the turbines were for "All Risk" insurance.

II. Mutual Mistake

■ ASPA also argues that the policy should be reformed based on mutual mistake. The proof required to reform a policy on the ground of mutual mistake must be more then a mere preponderance of the evidence. *See e.g. Hanes v. Roosevelt Nat. Life Ins. of America*, 452 N.E. 2d 357, 360 (Ill.App. 5 Dist. 1983); *Polaroid Corp. v. Travelers Indem. Co.*, 610 N.E. 2d 912, 917 (Mass. 1993). At the same time, the mistake warranting reformation must be harbored by *both* parties, and not just one. The RESTATEMENT (SECOND) OF CONTRACTS § 155 (1981) states:

> [w]here a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may . . . reform the writing to express the agreement.

Thus, reformation for mutual mistake requires a mistake by both parties, and must be proven by more then a mere preponderance of evidence.

NPI offered sufficient evidence, through the testimony of Martin Kreft, that the premium ASPA paid was commensurate with the level of protection under the 1991 policy, and that the limited coverage issued by Munichre was the one asked for by NPI's Arnold Carter. Full coverage would have apparently cost three times what ASPA was paying. It seems clear that NPI purposefully issued the 1991 policy at the level of protection, and for the premium, which appears in that written policy. ASPA, on the other hand, has not met its burden of proof on the issue of mutual mistake. If a mistake existed, it was unilateral, and the written terms of the policy will not be reformed to reflect ASPA's proffered revision.

III. Original Contract

ASPA also argues that, when renewing the policy, it was renewing the original "All Risk" policy. ASPA claims that NPI changed the terms of the policy without notifying ASPA and that the contract should be reformed to reflect the original policy which ASPA had believed that it was renewing.

The problem with this submission is again one of proof. Since ASPA has the burden of proof, it was incumbent upon ASPA to satisfactorily show

204

that the original policy purchased was for "All Risk" insurance. However, as discussed above, ASPA failed to meet this burden. There was conflicting oral testimony about whether the original policy contained the limiting language; however, all of the written policies offered at trial contain the limiting language. The weight of evidence tips in favor of NPI.

 Moreover, even if the policy had been changed, and we have no reason to believe that this was the case, NPI's failure to read its policy does not warrant reformation. Absent special circumstances, a party may attack a contract on the grounds of fraud only when he has exercised due diligence in protecting himself from that fraud. *See e.g. Vickers v. Roadway Exp., Inc.*, 435 S.E.2d 253, 254 (Ga.App. 1993). Here, ASPA failed to read, at the very least, its 1991 policy. At the same time, ASPA failed to offer any evidence that it had relied upon representations by NPI to the effect that the policy was "All Risk." Generally, where the failure to read the contract is induced by carelessness alone, no grounds exist for reformation or rescission. *See e.g. Dombrowski v. City of Omer*, 502 N.W. 2d 707, 710 (Mich. App. 1993), *appeal denied*, 506 N.W. 2d 871 (Mich. 1993). Only where it is shown that an insurer has agreed to renew a policy but in fact issues a new policy containing different terms, may the policy be reformed to read the same as the original policy. *See Maryland Casualty Co. v. Kramel*, 80 So.2d 897, 900 (La. App. 1955). However, as discussed above, ASPA failed to prove that the initial 1988 policy issued was for "All Risk" insurance.

## CONCLUSION

There being insufficient evidence to find that the initial 1988 policy issued was for "All Risk" insurance, and since all of ASPA's arguments rely on this presumption, they all fall with the finding that ASPA failed to prove that it originally contracted with NPI for "All Risk" insurance. Judgement will therefore enter for NPI.

It is so ordered.